WILLIAMS *v.* THE STATE.

85  535
93  560

If the evidence on the trial of one indicted for arson, though raising a suspicion of his guilt, does not connect him with the crime beyond a reasonable doubt, a new trial should be granted after conviction.

May 12, 1890.

Arson. Criminal law. Evidence. Verdict. Before Judge JENKINS. Putnam superior court. September term, 1889.

Indictment against George Williams for arson. The testimony for the State tended to show that the wife of George Williams was hired by Henry Hargroves to do day-labor, and had been staying at Hargroves' house on the land of one Armor, but on the night the house in question was burned, was staying with Amy Ward. Some time before the burning, defendant came over to Hargroves' to see his wife, and she told him she was not going to stay with him any more. Defendant did not object to his wife's living at Hargroves'. About a week before the burning, defendant came to Hargroves'

and unceremoniously entered the house without knocking, and Hargroves scolded him for it, but defendant said he meant no harm, and Hargroves told him he knew no better. Defendant looked like he was mad. He tried that night, and at another time before, to get his wife to go back to him, and she refused. On Saturday before the fire, defendant told a witness that his wife would not come back to him, and he had done nothing to her; that he would have revenge out of Hargroves, if he had to burn him down. The house which was burned was occupied, at the time of the burning, by Amy Ward. It was burned on Sunday night, when Amy Ward and defendant's wife were at the church. This church was about 600 or 800 yards from the house which was burned, and Hargroves' house was about midway. Defendant had gone to church with his wife, Amy Ward and others that night. It was quite customary for people to get water at Hargroves' well, which was near his house. The fire occurred during church time. There was no fire in the house when Amy Ward left it to go to church. About a half hour before the burning, John Hargroves met the defendant going towards the well by himself. He had on a light straw hat, and no other person wore a light straw hat that John Hargroves knew of. He asked John to allow him to draw the water from the well, and John told him all right. Scholar Mathis caught up with defendant and his wife that afternoon going over to Amy Ward's and passed them, and came on to Amy's and stayed there until they all went to church. After a time Scholar went out. He did not see defendant all the time. Defendant came out to where he was and said he wanted water and asked him to go with him (defendant), and they both went to the well, and Scholar went back with him to the church, but left defendant on the church grounds and does not

know what became of him.  In about a quarter of an hour afterwards, the alarm of fire was given.  At the church, on the night of the fire, defendant told Tom Jackson that he had had trouble with his wife, and asked Tom for a match, saying that when he went home he had a bad place to cross, a swampy place, and wanted to build a fire.  Defendant went on into the church after that, and after awhile came out and asked Tom for matches, saying he was going after water.  Tom did not see him when he came back and did not give him a match.  Defendant was at the fire, which burned rapidly and appeared to have caught near the chimney.  While there, he came up to where his wife was looking at some of her things that had been saved; and she told him to go away, that he was the cause of all this, to go up there and burn up the balance; that she looked for him to go and burn her things at Mrs. Reddick's, according to the version of one witness.  According to others his wife said to him, " Go away from me; if it had not been for you, this would not have happened."  There was testimony that defendant made no immediate answer to this, but afterwards remarked he would rather burn a cotton house than a dwelling.  One witness testified that defendant said "the house was set on fire by kerosene."  He took some part, either in getting things out of the house or in carrying them away; certainly in moving a chest of Amy Ward's.  After the fire, on the same night, he was at Henry Hargroves' house; his wife was there; he looked quite indifferent; he said he was sorry the house was burned; he stayed there no time hardly.  Fifteen or twenty minutes before defendant and Scholar Mathis went to the well Frances Hargroves saw somebody coming from towards the house that was burned and going towards the church, who had on a white straw hat; it looked like a white straw hat; the moon was

shining bright. Defendant and Scholar had about got to the church when Frances saw the light; and she gave the alarm and went to the fire; saw defendant there; he said he knew nothing about it. Defendant said that the reason he took Scholar to the well with him was, he knew something was going to happen. He also said he came to the well with Scholar but did not see any fire; that he looked and saw no fire. He said this when he and others were all talking about the fire.

The defendant introduced no evidence and made no statement. After verdict of guilty he moved for a new trial on the grounds that the verdict was contrary to law and evidence. The motion was overruled, and he excepted.

H. A. JENKINS, by HARRISON & PEEPLES, for plaintiff in error.

C. ANDERSON, attorney-general, and H. G. LEWIS, solicitor-general, by H. T. LEWIS, for the State.

BLANDFORD, Justice.

Williams was indicted and convicted of the crime of arson, in setting fire to an occupied dwelling-house. He moved the court for a new trial, principally upon the ground that the verdict was not sustained by the evidence. We have looked into the evidence in this case very closely, and we are satisfied that the same was not sufficient to establish the guilt of the accused beyond a reasonable doubt. The evidence in a criminal case must be sufficient to satisfy the jury, beyond a reasonable doubt, of the guilt of the accused, before they are authorized to find a verdict of guilty. The evidence in this case raises a suspicion against the accused, but we do not think it connects him with the crime beyond a reasonable doubt; and for this reason we reverse the judgment of the court below in refusing to grant a new trial.    *Judgment reversed.*