## Richmond.

BROWN v. COMMONWEALTH.

87 215
89 380

December 11th, 1890.

CRIMINAL PROCEEDINGS—*Arson*—*Case at bar.*—The evidence disclosed by the record *held* insufficient to establish, beyond a reasonable doubt, that the fire was incendiary and not accidental, and to warrant the verdict of guilty as charged in the indictment.

Error to the judgment of the judge of circuit court of Franklin county, refusing a writ of error to judgment of the county court of said county, rendered July 23d, 1890, on a verdict of guilty, on an indictment against plaintiff in error, one William Brown, for arson, whereby he was sentenced to be hanged by the neck until dead. Opinion states the case.

*George E. Dennis,* for the plaintiff in error.

*Attorney-General R. Taylor Scott,* for the Commonwealth.

FAUNTLEROY, J., delivered the opinion of the court.

As appears by a transcript of the record of the said county court, plaintiff in error took and tendered several bills of exceptions to the rulings of the said county court: that he, the plaintiff in error, petitioned the judge of the circuit court of Franklin county, for a writ of error to the said judgment of the said county court of Franklin county, and to award to him

a new trial; which said petition for a writ of error to the said judgment of the county court of Franklin county, and for a new trial, was refused by the said judge of the circuit court of Franklin county. The case is here upon a writ of error awarded by this court to the said judgment of the judge of the circuit court of Franklin county. The errors assigned are, first, that the writ of *venire facias* was not properly issued; which assignment is not well taken, as the record shows that it was regularly and duly ordered by the judge of the county court and issued by the clerk of the said court, directed to the sheriff of Pittsylvania county, commanding him to summon from the county of Pittsylvania twenty citizens of the said county, to be taken from a list to be furnished by the judge of the county court of Franklin county, residing remote from the place where the offence is charged to have been committed, and qualified in other respects, to serve as jurors on the trial of the said William Brown, and that the sheriff of Pittsylvania county returned the said writ of *venire facias* thus directed to · him, together with the names of twenty persons summoned by him and taken from the list furnished by the judge of the county court of Franklin, from which the panel of sixteen qualified jurors, free from exceptions, was completed; and the prisoner having stricken from the said panel four of the said jurors, the remaining twelve constituted the jury who tried the prisoner. There had been a former writ of *venire facias* to the county of Pittsylvania, duly executed and returned, to the county court of Franklin, which examined the jurors, summoned in pursuance of the said first writ of *venire facias*, upon their *voir dire*, and found only two of the persons so summoned and embraced in the list furnished by the judge of the county court of Franklin county, to be free from exceptions and qualified to serve as jurors upon the trial of the prisoner.

The second error assigned in the refusal of the trial court to exclude from the jury the evidence of the witness, Lucy Saunders, upon the ground, that it was immaterial and irrele-

vant, and calculated to excite and mislead the jury, to the prejudice of the prisoner. We are of the opinion that the evidence of this witness was relevant and legal; and that it was properly admitted upon the trial of the prisoner, as a link in the chain of circumstantial evidence tending to prove the connection of the prisoner with the perpetration of the arson for which he was being tried. * . * * "All such relevant acts of the party as may reasonably be considered explanatory of his motives and purposes, even though they may severally constitute distinct felonies, are clearly admissible in evidence " * * * Wills on Circumstantial Evidence, p. 47–8. Mr. Justice Erle said, his " experience had taught him that in cases of arson, indications of guilt were often found in extremely minute circumstances, which were not the less cogent on that account; that it was to the words, whether true or false, by which a man accounted for himself at the critical time, to his conduct when the fire was in progress, to his manner of offering assistance, and other such particulars, that attention should be directed ; and, that, in the absence of broad facts, such minute circumstances often afford satisfactory evidence." (*Idem.*)

The third and last assignment of error is the refusal of the county court to set aside the verdict of the jury on account of the insufficiency of the evidence, as set forth in the bill of exception number 2; which bill of exceptions says: "that upon the trial of this cause, at the July term of the court, after the jury had found a verdict of guilty against the prisoner, the counsel for the prisoner moved the court to set aside said verdict, on the ground that it was contrary to the law and the evidence, and insufficient to warrant conviction; which motion the court overruled, and *certified the facts to be as follows:* " then follows a statement by the court, of what the witnesses, *seriatim*, both for the prosecution and for the defence, testified upon the trial. It is not material to determine whether this bill of exceptions embodies the facts proved upon the trial, or

is only a certificate of the evidence, inasmuch as the considera-
tion of the evidence by the Commonwealth alone convinces
us that it is wholly insufficient to warrant the verdict of the
jury, which is plainly wrong. The *corpus delicti* is not proven,
as it must be, beyond a reasonable doubt, like every other fact
material to establish the guilt of the accused. The facts
stated by the Commonwealth's witnesses do not fully and
satisfactorily prove that the fire which burned the warehouse,
and from it was communicated to other buildings in the
town, was of incendiary origin; and they do not exclude the
hypothesis that the fire may have originated from accidental
causes. (Starke's Evidence, Vol. 1, page 511.) The record
shows, by the witnesses for the prosecution, that there had
been held in that warehouse that day a large and promiscu-
ous crowd of excited listeners and spectators at a public po-
litical meeting, and the Commonwealth's witness, himself,
speaks of his anxiety and apprehension of the danger of fire
from the "cigar stubb," or anything else with fire on it, being
left in the warehouse; though, indeed, he does not speak of
any liability of a conflagration from "fire-water," or whiskey—
the twin-abomination and concomitant of tobacco. The tes-
timony of G. W. B. Hale, A. R. Binford and Moir Stephens
is all that was offered by the prosecution to prove the *corpus
delicti.*

Hale said that he was early at the fire, and *thought* it was of
incendiary origin, because it had the appearance of having
caught from the outside, though it was burning both from
the inside and outside when he saw it.

A. R. Binford testified, that when he got to the fire it was
very small; could have put it out with two buckets of water,
but was uneasy about his brother, who was sick near by, and
went back to see about him; that he was satisfied that the fire
was the work of an incendiary; that he found a plank torn
off—did not know how long it had been torn off—the ware-
house, the northwest corner, about ten or twelve inches wide;

that he put his head in through the hole and saw where oil had been poured along the planks or beams to a pile of trash which was not on fire; that there was a black charred mark or line made by the fire from the inside of the warehouse, where he stood, to the said pile of trash which was about 18 feet out towards the centre of the warehouse; that he had no reason for thinking that any oil had been used, except from the appearance of the charred mark aforesaid.

This witness, who thrust his head in through a hole only ten or twelve inches wide, and saw the fire in a pile of trash, "very small," and which he could have put out with two buckets of water, so lost his head, that, though he had presence of mind to mark the minute observations of which he testifies, he, yet, instead of putting out the fire, "very small," or at least calling for help, ran away from the place, to look after a sick brother; never reflecting that, by putting out the fire, in its very small beginning, in a pile of trash lying on the floor of the warehouse (which he says he could easily have done), he could have saved the warehouse and the other houses which took fire from it. His mere opinion, based upon what he says he saw, with his excited head thrust through that small hole, is hardly sufficient to prove that the very small fire which he saw smouldering in that pile of trash upon the floor of the warehouse, was the work of an incendiary, rather than the possibility (and, in the proof in the record, the probability), that it was caused by some one of the crowded audience, who had packed that warehouse at a political meeting and public speaking that very afternoon, having thrown or dropped the stub of a lighted cigar, or match used to light a cigar upon that pile of trash. It is proved by an uncontradicted witness (Bowman), that much smoking was indulged in by that audience, and that cigar stubs were recklessly thrown around by the crowd. P. C. Clarke, for the Commonwealth, says that Massey had spoken in the warehouse that day (afternoon) to a large crowd; that after the speaking was over witness went into the warehouse

to see if any cigar stubs, or anything else with fire on it was left in the warehouse, he having a buggy therein. He satisfied himself that no fire was left therein, and so went out. He did not look under the floor, and he left the door open.

Dalton Dillard and Moir Stephens testified for the Commonwealth, that about a week before the fire they went under the warehouse after a tame fox, and did not remember seeing any trash or any inflammable substance there; that the foundation under the warehouse was composed of rock and red dirt.

This is all the evidence of the Commonwealth to prove the *corpus delicti*, and it is insufficient, plainly and palpably, to establish, to the exclusion of a reasonable doubt, that the fire was incendiary in its origin, and was not accidental.

But, admitting that the evidence reasonably and sufficiently proves the *corpus delicti*, there is not sufficient evidence to connect the prisoner with the perpetration of the offence, for which other agents have been tried, convicted, and hung; and all the evidence in this record against the plaintiff in error is purely circumstantial, and *the circumstances*, themselves, are not fully and satisfactorily proved; and, even though they were fully proved, they do not, taken separately, or all together, prove the guilt of the accused to the exclusion of every reasonable hypothesis consistent with his innocence. At the most, they create only a suspicion against him, which is plainly insufficient to warrant the verdict of guilty found against him by the jury, and the sentence of *death* pronounced against him by the court. The record shows that a dozen others, beside the plaintiff in error, are suspected, and of these, *three* have been condemned to be hanged for the offence. See *Anderson's Case*, 83 Va., 329; *Johnson's Case*, 29 Gratt., 796; *Grayson's Case*, 6 Gratt., 712, and 7 Gratt., 613; *Dean's Case*, 32 Gratt., 912; Starkie on Ev., Vol. 7, pp. 481–534, on the whole subject of circumstantial evidence. Being of the opinion aforesaid, that the *corpus delicti*, itself, is not fully proven by the Commonwealth, we have not deemed it necessary to review and pass in detail

upon the testimony of the prosecution, by which it is sought to connect the plaintiff in error with the commission of the crime charged. But, upon the whole case before us, as presented by the record, we are of opinion that the verdict of the jury is unwarranted by the evidence, even considering that for the Commonwealth alone; and that the trial court erred in overruling the motion of the prisoner to set it aside and award to him a new trial. That the judgment complained of is erroneous, and must be reversed and annulled, and a new trial granted to the prisoner.

LACY, J., dissented.

JUDGMENT REVERSED.