[No. 710.  Decided June 30, 1893.]

THE STATE OF WASHINGTON, *Respondent*, v. E. L. PAYNE, *Appellant.*

APPEAL — SETTLEMENT OF BILL OF EXCEPTIONS — JURIES — MANNER OF SELECTION — EVIDENCE — PROOF OF FORMER CONVICTION — CREDIBILITY OF WITNESS — LARCENY — SUFFICIENCY OF EVIDENCE — ADMISSIONS.

Where an appellant has filed his bill of exceptions with the judge and served the respondent with a copy within the prescribed time, to which the respondent has filed objections and suggested certain amendments, the fact that the judge does not settle and sign the bill at the designated time, but subsequently, after a considerable length of absence from the state, settles and signs the bill of exceptions without notice to the respondent, but embodying the amendments proposed by the latter, is not sufficient ground for striking the bill from the transcript.

Under §§ 59, 61, Code Proc., prescribing the method of drawing a jury from the jury list certified by the county commissioners, a deputy sheriff is not authorized to act in place of the sheriff.

The fact that a sheriff does not make a return of his doings in summoning a special venire of jurors until after the commencement of the trial, is not ground for a challenge.

The certificate of the officers to a jury list drawn by them should state how the drawing was actually done, and not simply that it was conducted fairly and as provided by law.

Proof that a defendant in a criminal prosecution has formerly been confined in the county jail is irrelevant.

The only competent evidence of the former conviction of defendant in a criminal prosecution is the production of a judgment of a court of competent jurisdiction founded upon an indictment or other proper accusation.

The former conviction of a witness for the commission of a misdemeanor cannot be proved for the purpose of affecting his credibility.

An admission by defendant that he knew a certain larceny had been committed, was not evidence that he actually participated in the commission of the crime, and he could not be convicted on such an admission as a principal and active participant in the larceny.

The evidence is insufficient to sustain the conviction of defendant for the crime of grand larceny, when it is shown that the defendant and A and C, who had been drinking together, went to bed in a lodging house, occupying one room; that the defendant and A got up in the night, leaving C in the room with the door unlocked, and repaired to a neighboring saloon, where they spent the night in drinking, the defendant paying for the drinks with a twenty dollar gold piece; that C discovered in the morning that he had been robbed of his pocket book containing a twenty dollar gold piece; but there was no evidence identifying the coin spent by defendant as the one stolen from C, and defendant proved that he had received two twenty dollar gold pieces, in addition to silver coin, about a month prior thereto from a man for whom he had been working; and it was further shown that defendant had and was spending money on the night of the larceny and before the alleged commission of the crime.

*Appeal from Superior Court, Pierce County.*

*Andrew J. Hanlon,* for appellant.

*W. H. Snell,* Prosecuting Attorney, and *Charles Bedford,* for The State.

The opinion of the court was delivered by

ANDERS, J.—The appellant and one Arquet were tried, convicted and sentenced to the penitentiary for a period of seven years, upon an information charging them with the crime of grand larceny.

The case has heretofore been before this court on motion to dismiss for failure to file a transcript within the prescribed time; and the respondent now moves the court to strike from the transcript the bills of exception, on the grounds that they were signed after the time provided by statute and after the court had lost jurisdiction to sign and settle the same; that the same were signed without notice to the respondent as to the time and place, and without any time being set by the court; and that there are in the record what purports to be bills of exceptions and statement of facts, and the latter revokes and supersedes the former.

It appears from the record that a notice containing a statement of the time at which the attorneys for the appellant would apply to the judge to settle and sign the bills of exceptions, which were annexed to the notice, was served on the prosecuting attorney within the time prescribed by § 393 of the Code of Procedure.    The prosecuting attorney filed objections and suggested certain amendments to the same, and they were not settled or signed at the time designated.    Before taking any action in the matter, it seems that the judge had occasion to absent himself from the state for some time, but he subsequently settled and signed the bills of exception embodying therein the amendments proposed by the prosecuting attorney.    No new notice of the time of settlement is shown, and no order fixing a time when the bills of exceptions would be signed appears.    It does not appear that the appellant refused or neglected to do anything required of him by law, and the question is, shall he now be deprived of the right to have his case reviewed upon its merits in this court simply because the attorney for the state is not shown by the record to have had notice of the *final* action of the court in the premises?    Under the circumstances, we think he should not.    It is not claimed or suggested that the bills of exception are not in accordance with the facts; and having been brought to the attention of the court in proper time, we see no reason why they should not be considered.    No statement of facts such as is provided for by statute, was filed or settled, but all of the matters for consideration on this appeal are brought up in the form of bills of exception certified by the trial judge.

The motion must be denied.

Before the commencement of the trial the defendant interposed a challenge to the panel of twenty-four jurors on the grounds that the names were not drawn from the jury list certified by the county commissioners, by the persons

designated by law to draw the same, and that the list as
drawn was not properly certified. Although the challenge
was not in writing, sworn to, and proved, as required by
§ 1300 of the Code of Procedure, it was nevertheless enter-
tained and considered by the court. The particular objec-
tion to the panel was that the deputy sheriff, instead of the
sheriff, assisted the county clerk and auditor in drawing
the jury. The statute provides (Code Proc., § 59) that—

"The clerk of the superior court, or his deputy, and
the sheriff and county auditor, shall place ballots prepared
from such list in a box, and having thoroughly mixed
them, the clerk, or his deputy, being blindfolded, shall
draw the requisite number to serve as such petit jurors."

And § 61 further provides that—

"If from any cause the sheriff or auditor, or both, shall
not attend and assist the clerk in drawing jurors, as in this
chapter provided, the clerk may call to his assistance such
other county officer or officers as he may choose, and they
shall proceed as is prescribed for the auditor and sheriff."

It will be observed that these two sections provide that
the deputy clerk may act in the place of the clerk, but
there is no provision authorizing the deputy sheriff to act
instead of the sheriff, and the clear implication of the lan-
guage used is that the sheriff must assist in the drawing,
in person, if at all, and not by deputy.

If it had been the intention of the legislature that the
deputy sheriff, like the deputy clerk, might act instead of
his principal, it seems that they would have said so, and
would not have said that if the sheriff shall not attend
then the clerk may call to his assistance such *other county
officer* as he may choose. But it is claimed by the re-
spondent that inasmuch as it is provided in § 80 of the
Code of Procedure that the deputy sheriff has all the power
of the sheriff and may perform any of the duties prescribed
by law to be performed by the sheriff, the deputy sheriff
was duly authorized to assist the clerk and auditor in

drawing the jury although not mentioned in the sections of the statute pertaining to the selection of juries above quoted. We apprehend, however, that the duties and powers of deputy sheriffs mentioned in § 80 are such only as are usually incident to the office of sheriff, and are to be performed by him in his official capacity as sheriff, and do not include the execution of duties which are unofficial in character, and which may by law be performed as well by any other county officer who may be properly requested to perform them. The sheriff is designated by the legislature to perform, or assist in performing, the important duty of drawing the names of those who shall act as jurors, not because he is sheriff, but because he is deemed a proper person to execute a trust which must be confided to some one to perform. It needs no argument to prove the proposition that every person who has a cause to be tried in court has a right to have it submitted to a legal jury, that is, a jury selected by the persons designated by law. The statutes we are considering were passed long after § 80 became a law, and we cannot escape the conviction that if the legislature had intended that a sheriff's deputy might be delegated by the sheriff himself to perform this particular duty, they would not have made it the duty of the clerk to select some other county officer in the absence of the sheriff. Such trusts as are conferred upon the sheriff and auditor in this matter are, in our opinion, personal to themselves if accepted, and cannot be delegated by them to others. *State v. Newhouse*, 29 La. An. 824. Mere irregularities in the drawing of the jury are not grounds of challenge under our statute, but we do not deem a drawing by persons not authorized by law to be an irregularity merely, but a departure from the provisions of the law itself. *Brazier v. State*, 44 Ala. 387. We think, under the provisions of our jury statutes, and conceding for the purposes of this case that the defendant's challenge to the

panel was properly presented, that it should have been sustained.

The challenge and motion to set aside the special venire of fourteen names was properly disallowed, as it is not shown that the venire was not issued for a sufficient reason.

The challenge, on the ground that the sheriff or officer who summoned the jurors by virtue of the special venire did not make a return of his doings thereon until after the commencement of the trial, was properly overruled. It was not a sufficient reason for quashing the venire, and the court did right in causing the proper return to be made. Proffatt on Jury Trials, § 136.

The certificate of the officers who assisted in drawing the jury, to the list returned, is open to objection. It should have stated how the drawing was actually done, and not simply that it was conducted fairly and as provided by law..

Upon the trial the defendant himself testified in his own behalf, and upon cross-examination he was asked the question, ''Were you ever confined in the county jail?'' And also the further question, ''Were you ever convicted of a crime before?'' To each of these questions the defendant answered ''No.'' Afterwards the prosecution introduced the sheriff of the county, whom the court permitted to testify, over the objection of the defendant, that the latter had been in the county jail under a conviction of petit larceny before a justice of the peace. He was also permitted to read to the jury the jail record and an order of commitment issued by the justice of the peace. This was clearly error on the part of the court.. When the witness was asked the question, ''Were you ever confined in the county jail?'' and answered ''No,'' the state was concluded by the answer, and could not contradict the witness. The matter inquired of was collateral and irrelevant to the

issue before the jury, and was, therefore, irrebuttable. *Freidrich v. Territory*, 2 Wash. 358 (26 Pac. Rep. 976); *People v. McKeller*, 53 Cal. 65; *People v. Bell*, 53 Cal. 119. *Coble v. State*, 31 Ohio St. 100; Wharton, Crim. Ev. (9th ed.), § 484.

If it was competent to show that the appellant had been previously convicted of a crime, neither the jail record containing the names, description and term of sentence, etc., of persons confined therein, nor the warrant of commitment, was competent evidence to establish that fact. A conviction can only be shown by the record. A warrant of commitment, or, in other words, a *mittimus*, is sufficient to authorize and justify the sheriff in receiving and detaining a prisoner in the county jail, but it is not proof of a conviction. That can only be shown by the production of a judgment of a court of competent jurisdiction founded upon an indictment or other proper accusation. *Bartholomew v. People*, 104 Ill. 601.

But it is urged on behalf of the appellant that it was error to permit the prosecution to attempt to prove a former conviction of appellant of petit larceny, even for the purpose of affecting his credibility as a witness. It is provided in § 1647, Code Proc., that no person offered as a witness shall be excluded from giving evidence by reason of conviction of crime, but such conviction may be shown to affect his credibility, etc., but it is claimed that a conviction of a misdemeanor is not such a conviction of crime as is contemplated by the statute, and that only a conviction of a crime styled infamous is presumed, in law, to discredit.

At common law, persons convicted of infamous crimes were excluded from testifying as witnesses in courts of justice. Not all crimes were deemed infamous, but treason, felony and the *crimen falsi* were classed as such.

Whart., Cr. Law (9th ed.), § 22 a. Our statute provides that a crime shall be deemed infamous which is punishable by death or imprisonment in the penitentiary. Gen. Stat., § 345. And crimes so punishable are felonies, while all other offenses are mere misdemeanors. Code Proc., § 1184. Petit larceny is, under our law, not an infamous crime.

Is it, then, a crime, the conviction of which may be shown to affect the credibility of a witness? In the case of *Bartholomew v. People, supra,* the supreme court of Illinois, in considering the effect of a statute quite similar to § 1647 of our code, held that the purpose of such a statute is simply to remove the common law disability, and to allow witnesses to testify who were thereby excluded, and that it does not profess to, nor does it by implication, enlarge the class of cases wherein convictions discredit the witness. In further speaking of the design of the statute, the court said:

"It could not have been designed to have allowed proof of a conviction for an offense, not legally presumed to affect his credibility, to be given in evidence."

And analogous statutes have been similarly interpreted by the courts of other states. See *Coble v. State,* 31 Ohio St. 100; *Card v. Foot,* 57 Conn. 427 (18 Atl. Rep. 713). The convictions, therefore, which are referred to in § 1647 are only convictions of such crimes as before its passage excluded witnesses from testifying on account of infamy, and the crime, a conviction of which was attempted to be shown, was not of that class. It therefore follows that it was not competent to prove, or attempt to prove, it for the purpose of affecting the credibility of the appellant, or for any other purpose. And the charge of the court to the jury upon this point was also erroneous.

A witness for the prosecution, a member of the police

force of the city of Tacoma, testified that he had a conversation with Payne at the jail, and that—

"He (Payne) told me that he had been wrongfully arrested; that he did not have anything to do with robbing the man, but he knew about it and helped 'blow in' the money. He said all three went to the lodging house together and took three beds in one room; that he couldn't sleep, and in a short time he got up and went down and got the drinks; that Arquet throwed down the twenty dollars and says, 'how's this?' and after that they went up to Hank Halstead's and blowed in the biggest part of it."

This testimony is referred to as an admission, and also as a confession, on the part of Payne. And, in view of its having been introduced, the defendant requested the court to charge the jury as follows:

"*Second:* A confession made by a defendant that he knew, some time after the crime was committed, that the crime charged had been committed, is not evidence that he actually participated in the commission of the crime charged in the information, but would be evidence tending to show that he was an accessory after the fact, and could not be convicted on that confession as a principal and active participant in the commission of the crime charged."

The court declined to so charge the jury, and in so doing, we think, committed error. Nor do we think the error was cured by the instruction which the court did give, which was as follows:

"You are instructed that an admission made by a defendant that he knew, some time after the crime was committed, that the crime charged had been committed, would not be evidence that he actually participated in the commission of the crime charged, and such an admission taken alone and without other testimony showing that he actually participated in the commission of the crime charged, would not be sufficient to warrant his conviction of the crime charged."

This instruction is inconsistent with itself and was, therefore, calculated to confuse and mislead the jury.

The appellant contends that the testimony is insufficient to warrant the verdict.   And this raises a question which we approach with no small degree of reluctance.   But as insufficiency of the evidence is made a ground for a new trial by statute, it becomes our duty to determine the question thus presented.   The testimony in the case is wholly circumstantial, and the facts are briefly these: The defendant, who had been living for some time at Anacortes, came up to Tacoma about the 16th or 17th day of January, 1892, and engaged in selling oysters in the saloons and about the streets at night.   On the evening of February 21st, at about 8 or 9 o'clock, the appellant, Arquet, and Cox, whose money is alleged to have been stolen, were together in a saloon drinking, each treating the others in turn.   In this they continued until after ten o'clock, when Arquet and Cox went together to a variety theatre, where they remained until half past two o'clock, at which time they returned to the saloon, where they again met Payne, who had put up his "oyster outfit" and come back to the saloon before the others returned from the theater.   They again engaged in drinking for a while, and were all more or less intoxicated, and finally went to a cheap lodging house adjoining the saloon and went to bed, Payne paying for his bed and Cox paying for his and that of Arquet. They all occupied the same room, but each had a separate bed.   Arquet and Payne undressed, but Cox lay down without taking off his clothes, and, as it appears, soon fell asleep, as also did Arquet.   After they had been in the room an hour or more Payne got up, went to the head of the stairs and called the night clerk and asked him where he could get a drink.   The clerk informed him that he thought the saloon next door was still open, whereupon he went back to his room and proceeded to dress himself, after which he and Arquet, who awoke in the meantime, again repaired to the saloon, leaving Cox in bed and the

door unlocked as it had been previously to their getting up.  The clerk at the lodging house accompanied Payne and Arquet to the saloon, where he took a drink with them and returned immediately to the lodging house.

About this time a police officer came into the saloon and he and the other two men remained there until six or seven o'clock in the morning engaged in conversation and drinking, when Payne proposed to return to the lodging house and go to bed, but, at the suggestion of Arquet, the three went to a restaurant and took breakfast, for which Payne paid.  During the night Payne, in paying for the drinks, gave the bartender a twenty dollar gold piece from which the amount due for the drinks was deducted and the balance returned.  This, it appears, was after Payne came back from the lodging house.

Cox did not awake until eight or nine o'clock in the morning, when, as he testified, he found that his pocketbook, containing a twenty-dollar gold piece and some smaller coins had been stolen.  He met Payne about eleven o'clock and informed him that his money had been stolen, but did not accuse him of the theft.  As before stated, the door of the bedroom was not locked at any time while it was occupied by Cox, or by him and the other two men. At what time during the night or morning the money was supposed to have been taken is not shown, but Cox testified he had it in his pocketbook when he went to bed. There is no evidence showing that Payne ever had Cox's pocketbook, and the circumstance of his having a twenty-dollar piece not shown to have been different in appearance from any other such coin, is the principal inculpatory evidence against him.  It is not shown that he had no money before he met Cox, or at the time he went to the lodging house.  In fact the evidence is uncontradicted that he had been spending money before that time and that he paid for his bed before retiring.  He denied having taken

any money from Cox, and stated that he got the twenty-dollar coin which was changed by the barkeeper and another twenty-dollar piece, together with some silver dollars, from a man by the name of Williams, for whom he had been at work. And Williams, being sworn as a witness, testified that at the time Payne left Anacortes he paid him forty-six dollars, consisting of two twenty-dollar pieces and six dollars in silver, and that on the previous evening he gave him six dollars in silver. If it was incumbent upon the appellant to explain his possession of the twenty dollars, which is not shown ever to have been the property of Cox, we think his explanation was a reasonable one. But until the coin had been identified as the property of Cox, its possession called for no explanation whatever. It is the possession of property *shown to have been stolen* that raises a presumption of guilt on the part of the possessor, not the possession of like property merely, and such presumption is destroyed whenever a reasonable explanation is given and is not shown to be untrue.

No man ought to be convicted of a crime upon mere suspicion, or because he may have had an opportunity to commit it, or even because of bad character, and where circumstances are relied on for a conviction they ought to be of such a character as to negative every reasonable hypothesis except that of the defendant's guilt. And a new trial should be granted where a conviction is had on evidence not connecting the defendant with the crime beyond a reasonable doubt. *Williams v. State*, 85 Ga. 535 (11 S. E. Rep. 859).

While we are loth to disturb the verdict of a jury on the ground of insufficiency of the evidence to justify the verdict, yet where the evidence as disclosed by the record is palpably insufficient to warrant the verdict, as we deem it to be in this case, it is our duty to say so and to award a new trial.

There was no error in excluding the testimony of Arquet as to alleged threats made by Nutter against him, similar to those alleged to have been made by him against the appellant, and by reason of which the so-called confession was claimed to have been made.

For the errors indicated the judgment is reversed, and the cause remanded for a new trial.

SCOTT and STILES, JJ., concur.

DUNBAR, C. J., concurs in the result.

HOYT, J.— I think there was error in the admission of testimony for which the case must be reversed, but I do not agree with the other conclusions of the majority of the court.