[No. 6164. Decided June 29, 1907.]

## THE STATE OF WASHINGTON, *Respondent*, v. MORRIS PIENICK, *Appellant*.[1]

ARSON—CORPUS DELICTI—EVIDENCE. In a prosecution for arson the *corpus delicti* is not established by the fact of the burning of a building, as the presumption is that it was by accident or natural causes.

SAME—SUFFICIENCY OF EVIDENCE. A conviction for arson is not sustained by purely circumstantial evidence creating a suspicion against the accused, unless he is connected with the crime beyond a reasonable doubt, or the circumstances are irreconcilable with his innocence; and where such evidence is consistent with the hypothesis of his innocence, and absolutely no motive was shown, the *corpus delicti* was not established beyond a reasonable doubt and the supreme court will reverse the judgment; although the trial court refused to set aside a verdict of guilty.

Appeal from a judgment of the superior court for Yakima county, Rigg, J., entered December 18, 1905, upon a trial and conviction of the crime of arson. Reversed.

*Fred Parker, Fremont Campbell,* and *Graves, Palmer & Murphy,* for appellant.

[1]Reported in 90 Pac. 645.

CROW, J.—The appellant Morris Pienick has been con-
victed of the crime of arson, and appeals to this court.  He
contends that the evidence was insufficient to sustain a con-
viction.

After a jury has weighed the evidence and the trial judge
has declined to set aside its verdict, an appellate court should
exercise the utmost caution in disturbing the verdict.  Yet in
this case, having examined the entire record, we feel it our
duty to award a new trial for want of evidence sufficient to
warrant conviction.  The fire occurred in a two-story building
at the intersection of two business streets of North Yakima.
In this building was a room occupied by a clothing store in
which the appellant was employed as salesman, bookkeeper,
and cashier.  Fronting on Yakima avenue, were windows and
glass doors which afforded a view of the interior to passersby.
The ceiling was about sixteen feet in height.  Towards the
rear was a light-well through the second story to the roof.
The ceiling was of wood, and the floor above rested on wooden
joists.  Between the ceiling and second floor was electric wir-
ing for lights, including two arc lights in the storeroom.
In addition to shelving along the sides and tables down the
center of the room, were several wooden boxes on which cloth-
ing was kept.  These boxes were under the light-well and the
ceiling surrounding it.  The business belonged to the Famous
Clothing Company, a corporation, substantially all the capital
stock of which was owned by an uncle of appellant.  The busi-
ness was in charge of one J. L. Mossler, who as manager was
conducting an auction sale.

The evidence against the appellant was largely circumstan-
tial.  It tended to show that appellant and the manager left
the store together, on Saturday, May 20, 1905, about 10:40
p. m., the manager going to his hotel and appellant to a res-
taurant; that appellant intended to return, make up his books,
and write a letter to his uncle, giving a report of the business;
that he did return in about fifteen minutes; that he unlocked
the store, left the front door open, turned on both arc lights,

made up his accounts, and wrote his letter; that he was within view of several people who passed by, one of whom saw him arranging some clothing in the back part of the room; that the clothing in that part of the store, which was usually kept on the boxes, was of the cheaper grades; that appellant turned off the lights, locked and left the store about 11:30 p, m., or a little later; that he mailed his letter, walked to his room some six or seven blocks distant, and went to bed where he remained until the fire alarm was sounded, when he arose, dressed and, with a lodger who occupied the adjoining room, went to the fire, and that on their way they met parties who told them the fire was in the Famous Clothing Company store.

The state's evidence further shows, that the fire alarm was sounded about twelve o'clock; that the firemen arrived a few minutes later, and gained admission by breaking the front door; that the room being filled with smoke prevented them from seeing clearly or entering more than a few feet; that immediately they threw water from fire hose to the back part of the room where the boxes were located, and some fire was seen; that flames then arose almost to the ceiling; that the fire was soon extinguished below, but as it was burning in and above the ceiling, the firemen repaired to the upper floor where they succeeded in extinguishing it; that a large portion of the ceiling and upper floor fell, many of the joists being burned through; that the burned portion of the ceiling was above the boxes on which the cheaper goods had been placed; that after the fire was extinguished, one Marsh, a rival clothing merchant, accompanied by a policeman who carried a lantern, entered the store and found the boxes arranged in a hollow square; that partially burned clothing and some paper handbills were on the floor within this square; that the boxes still remained intact, being burned only on the sides next to the clothing; that Marsh took some of the clothing to the street; that it smelled of some kind of oil which he and some other witnesses thought was kerosene; that the floor of the room was

not burned through, nor were the boxes of clothing entirely destroyed; that during the fire appellant made certain remarks showing indifference as to its destructive effects; that the auction sales had not been well attended; that the lease for the room had expired and the owner of the building had not consented to a renewal. These facts, which create suspicions against the appellant, are substantially all the facts upon which the state relied for conviction. Other undisputed facts favorable to the appellant will be hereinafter mentioned.

The appellant contends that the evidence was not sufficient to show the *corpus delicti*, or to establish his guilt beyond a reasonable doubt. Proof of the single fact that a building has been burned does not show the *corpus delicti* of arson, but it must also appear that it was burned by the wilful act of some person criminally responsible, and not as the result of natural or accidental causes. Where a building is burned, the presumption is that the fire was caused by accident or natural causes rather than by the deliberate act of the accused. 3 Cyc. 1003; *State v. Jones*, 106 Mo. 302, 17 S. W. 366; *State v. Millmeier*, 102 Iowa 692, 72 N. W. 275; 4 Elliott, Evidence, § 2807.

Circumstantial evidence only was produced by the state to show that the fire was of an incendiary character. No one saw appellant fire the building, nor has any motive for his doing so been shown. The arrangements of the boxes, the position of the clothing, the odor of kerosene, and the recent presence of appellant in the store are the circumstances relied upon to show that the fire was of an incendiary character.

"No general rule can be laid down as to the quantity of circumstantial evidence which in any case will suffice. All the circumstances proved must be consistent with each other, consistent with the hypothesis that the accused is guilty, and at the same time inconsistent with the hypothesis that he is innocent, and with every other rational hypothesis except that of guilt." 12 Cyc. 488.

See, also, *State v. Morney*, 196 Mo. 43, 93 S. W. 1117.

In *State v. Payne*, 6 Wash. 563, 34 Pac. 317, this court, in passing on an assignment of error similar to the one here involved, said:

"No man ought to be convicted of a crime upon mere suspicion, or because he may have had an opportunity to commit it, or even because of bad character, and where circumstances are relied on for a conviction they ought to be of such a character as to negative every reasonable hypothesis except that of the defendant's guilt. And a new trial should be granted where a conviction is had on evidence not connecting the defendant with the crime beyond a reasonable doubt."

The case of *Williams v. State*, 85 Ga. 535, 11 S. E. 859, cited with approval by this court in *State v. Payne, supra*, was one in which the defendant had been convicted of arson. The facts there proven are set forth in the statement, and create as much suspicion against the accused as the facts in this case. The supreme court of Georgia, however, in reversing the judgment of conviction, said:

"The evidence in a criminal case must be sufficient to satisfy the jury, beyond a reasonable doubt, of the guilt of the accused, before they are authorized to find a verdict of guilty. The evidence in this case raises a suspicion against the accused, but we do not think it connects him with the crime beyond a reasonable doubt; and for this reason we reverse the judgment of the court below in refusing to grant a new trial."

In *State v. Morney, supra*, an arson case, the supreme court of Missouri, discussing circumstantial evidence, said:

"Where a chain of circumstances leads up to and establishes a state of facts inconsistent with any theory other than the guilt of the accused, such evidence is entitled to as much weight as any other kind of evidence, but the chain, as it were, must be unbroken, and the facts and circumstances disclosed and relied upon must be irreconcilable with the innocence of the accused in order to justify his conviction."

See, also, the following cases, in which the evidence was held insufficient to sustain convictions of arson: *Jones v. Commonwealth*, 103 Va. 1012, 49 S. E. 663; *People v. Johnson*, 70 App. Div. 308, 75 N. Y. Supp. 234; *People v. Wagner*, 71

App. Div. 399, 75 N. Y. Supp. 950; *Brown v. Common-*
*wealth,* 87 Va. 215, 12 S. E. 472; *People v. Kelly,* 11 App.
Div. 495, 42 N. Y. Supp. 756; *Anderson v. Commonwealth,*
83 Va. 326, 2 S. E. 281.

Are all of the circumstances of this case consistent with the
hypothesis of appellant's guilt, and at the same time incon-
sistent with the hypothesis of his innocence? We think not.
The undisputed evidence shows that the greatest damage re-
sulting from the fire was to the ceiling, the upper floor, and
the joists between them; that the lower floor, although burned,
was not destroyed; that the ignited clothing was not entirely
consumed; that the boxes remained sufficiently intact to be
produced and identified at the trial; that a former tenant who
had occupied the room a short time previously had frequently
applied to the floor an anti-dust preparation of oil which re-
sembled crude petroleum; that appellant actually wrote and
mailed his letter and report; they being produced at the trial
with the postmarked envelope; that the stock was not over-
insured; that the ceiling and upper floor burned near the elec-
tric wiring and over the boxes and clothing; that when the
firemen entered the building they turned a stream of water on
the boxes; that this occurred before Marsh and the policeman
entered the room, and that the appellant advised his uncle of
the fire immediately by wire. There is an utter absence of
evidence showing any motive on the part of the appellant. It
affirmatively appears that he had no interest in the stock or
business. It is not shown that he entertained any malice
toward the owners of the building or stock of goods, that his
books were burned, that he was a defaulter, that the store
contained any books, papers, or documents which he wished
to destroy, or that he would gain any benefit from the fire.

In *State v. Morney, supra,* the supreme court of Missouri
further said:

"In this case there was also an absence of any proof of an
inducing motive for the burning of the building by defendant.
There is no pretense that the defendant derived or expected to

derive benefit of any kind from the burning of the building, or that he entertained malice or ill will towards its owner; and, while this does not disprove defendant's guilt, the absence of any motive for the crime should under the circumstances disclosed by this record be taken into consideration in passing upon the question of his guilt."

It may be here noted that, although many entered the store and examined it shortly after the fire, no one other than Marsh, the rival clothing merchant, was shown to have discovered any goods smelling of kerosene. There is no evidence that the appellant had any kerosene about the store or elsewhere under his control, or that he had recently purchased any. The identical clothing removed by Marsh was turned over to the fire department, and two of the firemen who examined it next day failed to discover any odor of kerosene. Other witnesses who examined it on the night of the fire were unable to detect any such odor. The appellant, when in the store shortly before the fire, made no attempt to conceal his movements, but had turned on both arc lights, had left the front door open so that any one might enter, and was at all times in full view of many passersby who had been attending public affairs in North Yakima, one being a dance in a hall about two hundred yards distant.

The theory of the appellant is that the fire started between the ceiling and upper floor, from some defect in the electric wiring, where it first burned above the boxes on which the clothing was placed; that having burned through the ceiling, it fell on and ignited the clothing; that the force of water from the fire hose disarranged the boxes and pushed the clothing to the floor, where it smouldered without burning through the flooring or entirely destroying the boxes; that if any odor of oil in fact existed, it either came from the floor which had absorbed the preparation applied by the former tenant, or from burning paint. He insists that the evidence can only be reconciled with this theory, as the greatest destruction resulting from the fire was in the ceiling, joists, and upper floor,

where it must have started, and not in the clothing, boxes, or floor below where the state contends the fire was started by the appellant; that if the fire had been communicated to the ceiling from the clothing and boxes, the greatest destruction would have occurred below. This appeals to us as a reasonable explanation of the origin and character of the fire. The undisputed facts and circumstances satisfy us that the *corpus delicti* has not been proven beyond a reasonable doubt.

While we seriously hesitate to set aside the verdict of a jury for insufficiency of evidence, especially after the trial judge, who saw the witnesses and heard them testify, has refused to do so, we are nevertheless impressed with the conviction that injustice may be done, and that a possibly innocent man may suffer if the judgment in this case is affirmed. The law presumes the innocence of the appellant until his guilt is established beyond a reasonable doubt. We do not feel that we are invading the province of the jury in holding the evidence before us insufficient to warrant a conviction. No motion for a directed verdict was made at any time before the case was submitted to the jury, but the appellant did interpose a motion for a new trial, after verdict and before judgment, which motion, for reasons above stated, should have been sustained.

The judgment of the superior court is reversed, and the cause is remanded for a new trial.

ROOT, DUNBAR, RUDKIN, and MOUNT, JJ., concur.