### 28073. CHENEY v. THE STATE.

DECIDED FEBRUARY 20, 1940.

*Howard, Tiller & Howard, A. T. Walden,* for plaintiff in error.
*John A. Boykin, solicitor-general, J. W. LeCraw, E. E. Andrews,* contra.

GUERRY, J. Fannie Cheney was convicted of arson. To a judgment overruling her motion for new trial she excepted only on the general grounds.

The defendant and her family occupied three rooms on one side of an apartment house, while the Coffee family, including Robert Coffee and his wife, Lillie Mae, occupied the three remaining rooms on the opposite side of the house where the burning in question originated. At the time of the fire Robert Coffee was away at work. The defendant was the only occupant of her apartment. The fire started under the Coffee side of the apartment, over next to an alley, under the house, from rags on a sill bearing the odor of kerosene, where also was found a pickle jar, also containing the odor of kerosene and similar to a jar which had previously been seen in the kitchen of the defendant. About two months before the fire the defendant had quarreled with Lillie Mae Coffee over the placement of a swing on the porch used in common

by the two families, and over the use of electric lights and the payment of the light bills; the Coffee woman, to whom was chargeable the meter readings, cutting off the light current and thus forcing the defendant to use kerosene lamps which were in use currently at the time of the fire. Because of these quarrels their relations were bad. A small quantity of kerosene was missing from a can found in the defendant's side of the apartment. The fire was first discovered by the Coffee family, burning from without and up into a clothes closet, when a general alarm was given, Lillie Mae calling the alarm to the defendant. While the fire department was responding the Coffee family began moving furniture from their side, while the defendant had not as yet removed, or was able to remove, any of her furniture or effects, before the fire or its extinguishment. About two weeks before the fire the defendant wrote and mailed a note to Robert Coffee as follows: "Robert you have ben give a three day notices to move if you dont do so you will be destroyed by night it was sing by the neighbor." The defendant admitted the authorship of the note only after it had been proved on her, stating: "She was so disagreeable. I did not write it to her, I wrote it to her husband; thought maybe they would move. I did not mean any harm." As to the state of dress of the defendant, all the witnesses, including neighbors, testified that she was first seen to be in her night clothes and, because of her excitement, was aided by a neighbor to dress, or was seen to be in her night clothes before dressing lightly, save the witness, Lillie Mae Coffee, who testified that the defendant appeared at her door from within, about two minutes after being called, in full dress, "with a brown dress buttoned all the way down . . and wearing shoes and stockings and a stocking cap on her head, and a piece of white garment laying on her arm." However, this witness further testified that when the defendant remonstrated with her to move some things from blocking her door and "let me out of here" that she said, "Oh, you wouldn't talk to me like that; I was nice and kind enough *to wake you up* and get you out of the fire, to keep you from burning like that." (Italics ours.) There was no testimony of flight, or attempt at flight, by the defendant before or at the time of the fire, except from her room, or of attempt to remove any of her goods, either before or at the time of the fire, in anticipation of an impending fire, nor was there shown any incriminating ad-

mission as to any connection with the starting of the fire. The defendant denied any connection with the origin of the fire, and contended that she was sick and asleep when the alarm was called and that she had to dress before going out. She admitted several misunderstandings with the Coffee woman, stating that the Coffee woman was the most unreasonable woman she had ever lived by, though she had been herself living there for eight years.

Under the proved facts that the fire originated from rags and kerosene, we think the corpus delicti, or incendiary origin of the fire, was established. Beyond this the evidence established only a bad state of feeling or ill will between the Coffee woman and the defendant, and an inference of threat that harm would come to the Coffee family unless the Coffee family moved. These things, taken together in the light of the entire evidence, cast grave suspicion upon the defendant but were insufficient to exclude every reasonable hypothesis other than that of her guilt.

While the note written by the defendant to Robert Coffee implied a threat of harm, *and at night,* it did not specifically indicate a burning. In *Williams* v. *State,* 85 *Ga.* 535, 538 (11 S. E. 859), where the evidence established ill will and a *threat of burning,* the court held: "The evidence in this case raises a suspicion against the accused, but we do not think it connects him with the crime beyond a reasonable doubt." In *Brooks* v. *State,* 51 *Ga.* 612, it was held that the evidence, though circumstantial, was sufficiently strong to authorize a conviction. The court said: "About two or three weeks before the house was burned, defendant said that as soon as Prince Cranford got his stuff and cotton together, he would make him lose more than he would gain; Prince Cranford's stuff and cotton was stored in Price's house, with whom he was living; talked bitterly about him, and was very unfriendly towards Colonel Price; said to one witness that he wished everything Colonel Price had *was burned up,* and *him and his family burnt up in them;* that he had cheated him out of his crop for two years; *wished Colonel Price's building, and all he had, and his family, were burnt up in it,* that it would be a good thing for the country." (Italics ours.) The evidence further showed that the accused had been seen, about four hours before the fire, to go in the direction of the burned house, and "that he made no attempt to account for himself, or where he was, at the time the house was discovered to

be on fire." In the instant case there was no threat of burning *as* such, nor was the defendant seen under any suspicious circumstances at or near the fire at its time of origin. The fact that kerosene was missing from a can of kerosene, in a small quantity, was reasonably accounted for as having been used in the defendant's kerosene lamps. Further, the fact that the perpetrator of the crime had used a pickle jar similar to one seen previously in the kitchen of the defendant, was nothing more than a bare circumstance, in the absence of definitely identifying marks. The defendant was in her room, apparently asleep, at the time of the origin of the fire, as nothing is shown to the contrary. The weight of evidence was that on first appearance after the alarm had been called to her she appeared in her night clothes, notwithstanding one witness stated she was fully dressed, when at the same time that witness also testified: "I was nice and kind enough to wake" the defendant "up and get" her "out of the fire, to keep" her "from burning like that." Moreover, it appears that the defendant had made no flight, or attempt to flee, from the house; she had not taken any goods from the house nor was she attempting to take any; she had not made any incriminating statements indicating guilty knowledge or expectation of appearance of a fire. In this connection see *Williams* v. *State,* 11 *Ga. App.* 416 (75 S. E. 442), where the court held that the evidence was sufficient to convict where it showed more than a burning by criminal agency and motive or ill will. We quote the second headnote as follows: "The evidence was sufficient to show that the accused burned the house described in the indictment. It showed motive, or ill will, towards the owner of the house; flight from the house in the middle of the night, taking goods contained in the house; incriminatory statements made during their flight, indicating guilty knowledge and expectation of the appearance of a fire, which had been kindled just before leaving the house, and other circumstances sufficient to exclude every other reasonable hypothesis than that of guilt."

In the instant case, in the absence of proof of any certain threat, as such, to burn, or of any direct connection with the origin of the fire, or of suspicious flight or removal of goods, or of incriminating admissions, and where the result of this method of eviction of the other woman would equally have worked her own removal from the place where she had lived eight years, together with a possible de-

struction of her goods, we think the evidence was insufficient to exclude every reasonable hypothesis save that of the guilt of the accused. Code, § 38-109.

*Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*