The State v. Jones.

THE STATE v. JONES, *Appellant.*

DIVISION TWO.

1.  **Criminal Law**: ARSON IN FIRST DEGREE: DWELLING-HOUSE. A barn or stable usually occupied at night by a person lodging therein and so occupied when set fire to is a dwelling-house within the meaning of Revised Statutes of 1889, sections 3511-2, defining arson in the first degree.

2.  **Criminal Practice**: ARSON IN SECOND DEGREE. A person guilty of arson in the first degree can be indicted for and convicted of arson in the second degree under Revised Statutes, 1889, section 3513.

3.  ——: ——: WAIVER OF HIGHER OFFENSE. A defendant cannot complain of the fact that the state waives the right to prosecute him for a higher offense and proceeds against him for a less one, provided the latter is included in the former, and the accused is fully informed of the charge of which the state seeks to convict him.

4.  ——: INDICTMENT: CHARGING OFFENSE CONJUNCTIVELY. An indictment properly charges in the conjunctive the setting fire to or burning mentioned in the statute relating to arson in the second degree.  ( R. S. 1889, sec. 3513.)

5.  ——: VERDICT, SUFFICIENCY OF. A verdict is sufficiently explicit on the matter of imprisonment which, after the recital of the finding of defendant guilty, states that the jury " assess his punishment at five years in the penitentiary."

6.  ——— : EVIDENCE: THREATS. On a trial of an indictment for the arson of a building it is competent, for the purpose of impeaching the prosecuting witness and showing his feeling towards the defendant, for the latter to prove that the former threatened to break up defendant's father and family.

7.  ——: ——: ——. Such threats are competent evidence though made nearly two years before the alleged crime, where it appears the ill feeling continued down to the time of the fire.

8.  ——: CORPUS DELICTI, PROOF OF IN ARSON. The *corpus delicti* in arson is not merely proof of the burning of the building, but it includes proof that it occurred through the wilful act of some person criminally responsible for his acts, and not by natural or accidental causes.

*Appeal from Newton Circuit Court.*—HON. JOSEPH
CRAVEN, Judge.

REVERSED AND REMANDED.

THE grand jurors of Newton county, state of Missouri, at the May term of the Newton county circuit court, on the twenty-fourth day of May, 1889, found and returned into court an indictment against the defendant, as follows : "The grand jurors for the state of Missouri, impaneled, sworn and charged to inquire within and for the body of the county of Newton and state of Missouri aforesaid, upon their oaths present and charge that on or about the —— day of April, 1889, at the county of Newton and state of Missouri, one Reed Jones wilfully, maliciously and feloniously, did set fire to and burn a certain barn there situate, the property of J. A. Robertson, and of the value of $800, against the peace and dignity of the state," etc.

At the November term of the Newton county circuit court, 1889, the defendant was arraigned upon this indictment, and his plea of not guilty was duly entered of record. The defendant was put on his trial December 2, 1889, and the jury returned their verdict on the fifth day of December, 1889, in words and figures as follows :

" We, the jury, find the defendant guilty as charged in the indictment, and assess his punishment at five years in the penitentiary.

" [ Signed ]            .     I. E. MOORE,
                                 " Foreman."

The testimony shows that in the month of April, 1889, prosecuting witness, Joseph Robertson, owned a farm and a dwelling-house and barn situated thereon ; that the barn was situate about thirty yards from the dwelling-house in which Robertson and family lived and dwelt on the morning of April 30, 1889 ; that one Miller Crocket had his sleeping apartment in the loft of the barn, and had slept there for more a month, than

and up to the very time, and was in the barn asleep when he discovered the barn on fire at three or four o'clock on Tuesday morning, April 30, 1889 ; that the said barn was used as a lodging place for said Crocket. In fact, the evidence of Robertson and Crocket upon the part of the state proves that Crocket had no other place of sleeping prepared for him on the premises except the loft of the barn that was burned.

The testimony of the state shows that on the night of the burning it had rained, and was misting rain when the fire was discovered ; that the barn was in a field or lot which had been freshly ploughed and not a human track could be found going toward the barn, and not a track was found nearer than thirty or forty yards of the barn, and from that point went northwest toward Jones' and other neighbors' houses ; but the track was lost. The testimony of all the witnesses for the state agree that search was made in a circle of half a mile around that barn, and not a sign of a track could be found approaching the barn or the farm.

On the trial, the court admitted evidence both for the state and defendant tending to show that a bitter animosity existed between Robertson, the prosecutor, and Jones, his father-in-law. The prosecuting witness Robertson was asked by the state if he knew E. Armstrong, and replied he did. He was then asked if in a conversation with Armstrong he made a threat to break up Sam Jones and his family ; and he answered no. Armstrong was then called for the defendant, and was asked if Robertson stated in his presence at the survey of Jones' farm, that he intended to break old man Jones and his family up ? He answered yes. After cross-examination by the state the witness adhered to his testimony ; thereupon the attorney for the state moved to exclude his testimony, and the court sustained his motion and excluded it. To this, defendant objected, and saved his exception. The evidence was almost wholly circumstantial.

Maggie Meyers testified that Wednesday evening before the barn was burnt, Tuesday, that she was staying at Joe Robertson's while he was away from home; that she met defendant, and had a conversation with him; "He said, 'All the folks are away from home, ain't they?' I said, 'All who?' and he said, 'Joe, Samp and Bill,' and asked me if they had gone off to get rich; and I said I didn't know whether they had or not; and he said, he might lose more than he will make, and I said, I hoped not; and he asked me if I was staying with Sallie, his sister, Joe's wife, and I told him I was; and he asked me then if I was not afraid; I said there was nothing to be afraid of, *but that I was lonesome;* he asked me if Miller Crocket was staying there yet; I said he slept at the barn; he said it might get burnt up; that there had been such things as that done; and told me then that we had better keep Miller with us, for he would be up some night, and if we saw a light or fire or anything of that kind, that we would know what it meant; that was on Wednesday before the barn was burnt on Tuesday."

William Lewis testified that between the eighth and twentieth of April, Mose Peck sent him to his father's for some flour-sacks to haul off wheat. "I was working at Mose Peck's then; he told me to stop at Jones' and get some sacks there; I came by there, and Reed Jones went to get the sacks, and he came out with the sacks : I said something to him about Jim; if he had heard from Jim; Jim was his brother; Reed said, 'No, I ain't heard from him;' he says, 'My brother was too young to go out among strangers, and I will have my revenge out of Robertson, if I have to burn his barn down;' he said something about Joe's hired hand sleeping at the barn, and asked me to find out for him; I said I was not looking after that kind of business, and he would have to do it himself; this conversation took place about two weeks before the fire. The

first time I saw Reed after the morning of the fire was in Mose Peck's new ground; it was about two weeks afterward; he came to where I was plowing and said, 'Do you know the talk you and I had at father's gate?' and I said yes; 'Well' he said, 'what will you take to leave,' 'or will you leave?' I said, 'I ain't in no condition to leave; if you want anybody to leave you go yourself,' and ordered him out of the new ground there. A month or two after the barn burnt, I met Reed Jones again, and his brother; they were sitting on the fence, and as I rode up Jim said, 'Hi! Will;' and I said, 'how d'ye do;' and he said, 'Fat and sassy;'and Reed says, 'When I get back from the pen I will be fat and sassy, too;' I said, 'I guess you will;' he says, 'I heard you was going to send me there;' I said, 'You are ahead of me there;' and by that time, he jumped off the fence, and turned to my horse and said to me, 'What did you swear before the grand jury?' I said, 'I ain't allowed to tell;' and he said, 'God damn you, you will have to tell or you will have to die;' I said, 'I can die here;' Jim said, 'Shoot him;' he grabbed for a rock and threw and hit me, and knocked me off of my horse; I said, 'If that is your game, I will settle you;' and jumped and reached and started to hit him with a rock, when he got it and went and hit me again; and he hit me, and threw me down; and Jim said, 'Give it to him, God damn him;' Jim says, 'I will fix him;' and was in the act of getting his gun, which was in the corner of the fence; I jumped on my horse, and says, 'I guess I will be going;' they followed me, I don't know how far, but as far as I could see; I had them arrested for assaulting me."

The testimony introduced on the part of the defense was that of the father, mother and sister of the defendant, who testified that the defendant went to bed up stairs that night, at the usual time, and was there the next morning.

The State v. Jones.

*A. J. Harbison* and *O. L. Cravens* for appellant.

(1) The offense defined in the statute as arson in the third degree with which defendant was charged is not proven by the evidence. The setting fire to or burning of a dwelling-house, where a human being is at the time, is made by the statute arson in the first degree. R. S., sec. 3511. The court should have instructed the jury to acquit defendant. This was an edifice usually occupied by Crocket, lodging therein. *Ex parte Vincent*, 26 Ala. 145 ; *Killman v. State*, 2 Tex. App. 222 ; Bishop on Statutory Crimes, pp. 266, 267, and authorities cited ; Webster's Unabridged Dictionary ; R. S., sec. 3512 ; 1 Parker's Crim. Rep. 252. (2) There are two crimes conjunctively stated in the indictment, each recognized as separate and distinct offenses by the statute, viz., the setting fire to and burning of the "barn." It is just as necessary for the pleader to state that the burning was done wilfully, maliciously and feloniously, as it was the setting of the fire, if he undertakes to charge both, and the case should be reversed for this error. *State v. Johnson*, 93 Mo. 73. (3) The punishment designated in the statute for this offense is imprisonment in the penitentiary, and the verdict of the jury should so indicate. As the verdict is silent on that point it should not have been received by the court. R. S. 1889, sec. 3519. The verdict returned by the jury in this case is not in conformity to the provisions of the Revised Statutes, 1879, section 1927, for the reason that the verdict does not specify in what degree of the crime of arson was defendant convicted, and the judgment for that reason should have been arrested, and a new trial ordered. *State v. Jackson*, 99 Mo. 60 ; *State v. Montgomery*, 98 Mo. 339. (4) The testimony of Armstrong should have been admitted, as it shows the animus of the prosecuting witness. Also, the testimony of Lewis, included in brackets in the bill of exceptions,

should have be excluded. (5) The indictment charges the offense of arson in the third degree, and the testimony shows arson in the first degree, and hence a fatal variance. R. S., secs. 3511–3515.

*John M. Wood,* Attorney General, for the State.

(1) The offense of arson in the third degree, as charged, was clearly and conclusively established by the evidence; it could not have been arson in the first degree for the reason that the building was not a dwelling-house within the meaning of the law. Section 3512, Revised Statutes, 1889, defines what a dwelling-house is within the meaning of section 3511, and in that section it is stated "that no warehouse, barn, shed or other out-house shall be deemed a dwelling-house or a part of a dwelling-house within the meaning of the last section, unless the same be joined to or immediately connected and is part of the dwelling-house." (2) The indictment charges that the defendant "wilfully, maliciously and feloniously did set fire to and burn a certain barn," according to the common-law form, and is good both at common law and under the statutes. 2 Bish. Crim. Proc., secs. 33, 47. (3) The objection raised as to the sufficiency of the verdict is technical in the extreme. The authorities cited by appellant are not at all in point. (4) The record shows that the testimony of Armstrong as to Joe Robertson saying that old man Jones was trying to break him up, and that he was trying to do the same for Jones, was fully brought out. It is true there was an objection to this evidence, but not until it was all in. It is shown that these statements, if made at all, were made two years prior to the trial. However, these were declarations of third parties and inadmissible. *State v. Crawford,* 99 Mo. 74. Nor is there anything in the objection of Lewis' testimony. (5) There is no variance between the charge in the indictment and the evidence. See authorities cited in paragraph 1.

(6) The only objection made in appellant's brief to the instructions is that they failed to use the term "maliciously." At common law, it is true, it must be shown that the barn was burned maliciously, and in the instruction that question should be submitted; but under our statute the term "maliciously" is not used, but a "wilful burning" is declared to be arson. Such being the case, it is not required that the jury should find that the act was done maliciously, and this term need not be used in the instructions. *Thomas v. State*, 41 Texas, 27.

GANTT, P. J.—Defendant asks a reversal of the sentence against him on several grounds. He urges upon us, that, if he is guilty of arson at all, it is in the first degree, and not the third. The indictment in this cause is based on section 3515, Revised Statutes, 1889, defining arson in the third degree. It is not claimed that the indictment does not specifically charge and advise the defendant of every element necessary to constitute an offense under that section but the contention of the defendant is that the state went further and proved not only that he had burned a *barn*, but a barn that, by reason of its having been usually occupied by a person lodging therein, had become within legal contemplation a dwelling-house, and, therefore, if he was guilty of any crime it was arson in the first degree.

Our statute, sections 3511 and 3512, is an almost perfect rescript of the Revised Statutes of New York, 1829, volume 2, page 657, sections 9 and 10. This statute was construed by the New York court in 1 Parker's Criminal Reports, 252, in *People v. Orcutt*. In that case, the prosecution was for arson in the first degree. The proof disclosed that the building that was burned was a barn or stable in which were several horses. At the end of the barn was a room occupied as a sleeping room by the drivers and men employed in the stable. The court instructed the jury to inquire and find whether the

building had been usually occupied by persons lodging therein at night, and whether at the time of the commission of the offense there was some human being therein, and that, if they were satisfied that the building had been thus occupied, the wilful setting fire to and burning it in the night time constituted the offense of arson in the first degree. That whether a building was a dwelling-house or not, depended upon the fact whether it was usually occupied by persons lodging therein at night, and not upon the popular understanding of that term. If a part of it was occupied as a sleeping room, it was sufficient although other parts might be used for other and entirely different purposes. The prisoner was convicted in that case of arson in the first degree. We do not find that this case has ever been overruled or criticised in New York, or elsewhere, and it seems to us to be the proper construction of this statute.

The intention and spirit of the law was to declare the felonious burning of any building usually occupied by a human being lodging therein arson in the first degree. It matters not how rude and devoid of comforts this dwelling may be ; if it is the usual sleeping place of a human being, and he is occupying it when it is feloniously burnt, the statute makes it arson in the first degree. The statute makes no distinction between the burning of a palace and the hostler's room in this respect. In either case a human life is imperiled.

But the evidence is too meager in this record to enable us to form a conclusion as to arson in the first degree, and it is unnecessary, as it does not follow that when as in this case the indictment necessarily charges every ingredient material to, and necessary in, a charge of arson in the third degree, also, and the prosecution only asks a conviction of a lesser crime, that the prosecution must fail. On the contrary it is sufficient. This court held in *State v. Kneeland,* 90 Mo. 337, on a prosecution under Revised Statutes, 1879, section 1309, for stealing from the person in the night time, it was immaterial under

section 1810, that the evidence showed the crime to have been robberry, since the latter offense is but larceny committed by violence from the person; and section 1821 expressly provided that it was no cause for reversal, that the evidence showed, or tended to show, the defendant was guilty of a higher degree of offense than that of which he was convicted. The law remains the same to-day (see sections 4104 and 4115), and, notwithstanding the evidence tended to prove a case of arson in the first degree, it will not avail defendant. He cannot complain, if the state waives the right to proceed for the graver offense, provided always it includes the one with which he is charged, and he is fully informed of the charge of which the state seeks to convict him.

There is no force whatever in the point, that because the pleader charged that the defendant *set fire to, and burned*, the barn, that he charged two crimes conjunctively. It is the usual and proper formula in an indictment for arson. Nor is there any merit in the objection to the verdict. It is sufficiently plain that the jury assessed his punishment at *imprisonment* in the penitentiary. Such objections in a cause so serious are almost frivolous.

The defendant rightly complains of the action of the court in excluding the evidence of Armstrong to the effect that the prosecuting witness Robertson had threatened to break up old man Jones, the father of defendant, and his family. The witness Robertson had denied using such language. It was competent for the purpose of impeaching him, and to show his animus in the prosecution. In a case so doubtful, and when it is so questionable, whether the *corpus delicti* even had ever been proven, the defendant was entitled to this evidence, and it was error to exclude it. We can only conjecture that the court excluded it, because the threat was made nearly two years previous to the

trial; but, as the case shows this animosity was continued down to the time of the fire, we think it was competent for the jury to have it and weigh it with the other evidence. It must be borne in mind that this prosecution has some unusual peculiarities. A brother-in-law is the prosecutor, and the principal witnesses all come from his household. How far they may have imbibed his feeling toward his brother-in-law, we cannot tell; but evidence showing this extreme hatred of defendant, and his father's family is certainly competent for the purpose of weighing this testimony that comes from his immediate influence. For this error the cause must be reversed.

As this case must be tried again, we may, without trenching upon the province of the jury, remark that the *corpus delicti* in arson is not merely the burning of the house, but that it was burned by the wilful act of some person, criminally responsible for his acts, and not by natural or accidental causes. *Winslow v. State*, 76 Ala. 42; *Johnson v. Commonwealth*, 29 Gratt. 796; 1 American & Eng. Ency. of Law, p. 759; *Phillips v. State*, 29 Ga. 108. In *State v. Dickson*, 78 Mo. 438, this court held that proof of the *corpus delicti* involved two things, *first*, a criminal act; *second*, the defendant's agency in the production of the act; and cited with approval the language of Mr. Justice BEST, that "where presumption is intended to be raised as to the *corpus delicti*, that it ought to be strong and cogent." In a càse almost parallel to this, the court of appeals of Virginia refused to let a verdict stand, on account of the insufficiency of the evidence. That case, like this, depended almost wholly upon a previous ambiguous threat and proof of tracks. The tracks, as in this case, were not traced to the house of defendant, nor were they measured and compared with the prisoner's tracks. Upon the showing made in that case, the whole court agreed that the facts proved were plainly insufficient

to warrant the verdict of the jury. *Pryor v. Commonwealth*, 27 Gratt. 1009; *Grayson v. Commonwealth*, 6 Gratt. 712; *Smith v. Commonwealth*, 21 Gratt. 809.

The *corpus delicti* must be established in every criminal prosecution before a conviction can be sustained. While it may be established by circumstantial evidence, the courts, and particularly the trial courts, should see to it that such evidence is cogent and convincing, and excluding all other reasonable hypotheses. Mere suspicion, however strong, will not supply the place of evidence, when life or liberty is at stake. For the reasons stated, the judgment is reversed, and the cause remanded for a new trial. All concur.