## THE STATE v. SCOTT, Appellant.

### Division Two, November 17, 1903.

1. **Criminal Law:** CIRCUMSTANTIAL EVIDENCE: PROBABILITY OF GUILT. Suspicion or even strong probability of the guilt of defendant is not sufficient to authorize his conviction. Where circumstantial evidence is relied on, it must establish the defendant's guilt beyond a reasonable doubt by facts and circumstances which are consistent with each other and with his guilt, and entirely inconsistent with any reasonable theory of his innocence.

2. ————: ————: ————: GRAND LARCENY: CASE STATED. Defendant and another were charged jointly with the larceny of cattle from a pasture. The evidence showed that the defendants drove into the pasture with a hack between three and four o'clock in the afternoon. The principal witness for the State testified that he was in the pasture and had a conversation with defendants, in which they told him they were hunting squirrels; that he stationed himself with others in the road leading from the pasture to watch for the purpose of finding whether defendants took away cattle from the pasture; that it was between 150 and 200 yards from where he was standing to where he first saw defendants coming out of the pasture, and that at that distance he could see plainly enough to distinguish one man from the other; that he watched them during the time they were driving that distance, and that he saw nothing in the hack but the two men; that they drove up within about thirty feet of him, when the team wheeled, the hack was turned over and the team ran away, making a circle of about thirty or thirty-five feet, running into some growing corn, and returning to the road almost where they left it. All of the witnesses present testified that they saw no cattle. A few days after this occurrence a cow was found in the pasture with a slight cut on her jaw, and a calf with a piece of rope around its neck. There was also introduced in evidence a halter which it was claimed was found the morning after the larceny, near where the hack was turned over, and which appeared to have been cut with a knife. The State's theory was that the cow and calf were concealed in the hack, and that when the team ran away

and the hack was turned over, defendant or his accomplice cut the cattle loose and they escaped in the corn. There was no proof that the cow and calf were missing from the other cattle at any time. *Held*, that this evidence falls short of the clear and convincing testimony required to support a conviction.

Appeal from Holt Circuit Court.—*Hon. J. W. Alexander*, Special Judge.

REVERSED AND REMANDED.

*J. W. Stokes, E. J. Kellogg* and *Frank Petree* for appellant.

If the theory of the State is sustained, the cattle must have been tied in the wagon behind the seat, defendant and his companion sitting on the seat. They must have driven within thirty feet of witness King. The team must have turned suddenly to the right and turned the hack over, end for end. The team running away made a circle of not more than thirty feet and came out almost where they went in, defendant coming right out with them. Yet defendant during this time must have got out of the seat over to where the cattle were tied, cut the halter off the cow and the rope off the calf, got them both out of the hack over the seat, and then come out with the team. Unless this theory is accepted there is absolutely no evidence of any larceny. Defendant contends that the State's theory of this case involves a physical impossibility and that there is no evidence to justify a finding that any cattle were stolen. The judgment of the trial court will be reversed when there is an entire failure of evidence to show the guilt of the defendant as charged in the indictment. State v. Mahan, 138 Mo. 112. If the conviction is without substantial evidence to support it, the judgment will be reversed. State v. Marshall, 47 Mo. 378; State v. Kennedy, 16 Mo. App. 287; State v. Fuchs, 17 Mo. App. 457; State v. Russell, 17 Mo. App. 16; State v. Sellner, 17 Mo. App. 39; State v. Bruner, 17 Mo. App. 274.

*Edward C. Crow*, Attorney-General, *Sam B. Jef-fries*, Assistant Attorney-General, and *Jerry M. Jef-fries* for the State.

A crime can be proved by circumstantial evidence. In this case, it can not be said there is no evidence on which to base the verdict. This being a fact, and defendant's motion for a new trial being overruled, this court will not interfere. The question on the weight of the evidence is one entirely with the jury, and unless it clearly appears that the trial court abused its discretion, this court will not interfere. State v. Rose, 142 Mo. 418.

FOX, J.—Defendant was indicted by the grand jury of Holt county, at the August term, 1899, of the circuit court of said county. The indictment charged the defendant and one Charley Wickiser jointly with grand larceny. The charge of larceny consisted in the stealing of two head of cattle, alleged to be the property of Stephen and William Cunningham.

There was a severance granted and at the August term, 1902, this defendant was put upon his trial, which resulted in his conviction, and punishment assessed at two years in the penitentiary. Timely motions for new trial and in arrest of judgment were filed and overruled, and defendant prosecuted his appeal to this court.

The cattle charged to have been stolen were in a large pasture known as the Cunningham pasture, and counsel for appellant very aptly presents the position of the State as follows: "The State's theory of this case is that the defendant went in the Cunningham pasture, which contained about seven hundred acres of timbered land, and there caught a cow that would weigh about seven hundred pounds, and a yearling calf that would weigh from three hundred and fifty to four hundred pounds, and put them into an ordinary hack, alive, with a halter and a rope upon them, and were

driving out of the pasture with the cattle in the hack, when the hack turned over and the cattle were cut loose and gotten out of the hack by the defendants.''

It is insisted by appellant that there was not sufficient evidence to support his conviction. This is the principal contention, and in view of the conclusion we have reached upon that proposition, it is not necessary or important that we dispose of other minor questions involved in this cause.

The salient facts upon which the State must rely to support this verdict are substantially as follows:

As before mentioned, the larceny charged, if committed at all, was in the Cunningham pasture. The evidence discloses that the defendants drove into the pasture between three and four o'clock p. m., and that George King, the principal witness upon the part of the State, went down into the pasture and saw the defendants and had a conversation with them in which they told him they were hunting for squirrels. His evidence further shows that he stationed himself with others in the road leading out from said pasture to watch for the purpose of finding whether or not defendants took any cattle out of the pasture. He testifies that it was between one hundred and fifty and two hundred yards from where he was standing to where he first saw defendants coming out of the pasture; that at that distance he could see plainly enough to distinguish one man from the other. That he watched them during the time they were driving, in a walk, that distance and that he saw nothing in the hack but the two men. He says that they drove up within about thirty feet of him when the team wheeled to the right and the wagon was turned over and the team ran away making a circle of not more than thirty or thirty-five feet, and came right back to the road almost where they left it. All the witnesses present testify that they saw no cattle.

Some days after this transaction, a cow was found

in the pasture with a slight cut upon her jaw, and a calf with a piece of rope around its neck. There was also introduced in evidence a halter which is claimed to have been found the next morning, near where the hack turned over, and which it is said appeared to have been cut with a knife.

It further appears that when the horses became frightened, in turning they ran some ten or fifteen feet, into the standing growing corn.- Witness King (and no one on the part of the State details what occurred there differently or more strongly for the prosecution), says: "Did you watch the team after it started to run? A. Yes, sir. Q. You kept your eye on it from the time it started, and you have marked out the course here? It turned to the right and didn't get more than fifteen feet from the road, and run back into the road, and down the road, and through this fence, and up here? A. Yes, sir. Q. You kept watching it all the time, didn't you? A. Most of the time. Yes, sir. Q. Now where did Bill Scott strike the road? A. He went right along with me over here. Q. He was in here when the hack turned? A. He was out here about the same time the team came out of there. Q. Do you know whether he was thrown out of the hack or jumped out? A. No, sir, I don't know."

With all this careful watching and attention given this runaway team, he saw no cattle in or near the hack or escaping from it. He further states that defendant called to him to stop the horses and afterwards asked him why he had frightened his team. A paper of salt and some nails were found near where the hack turned over.

Cunningham testifies that, with a light from some matches, he looked in the hack and saw some manure. Witness Jarrott says he looked in the hack at the same time Cunningham did, and that he did not see anything. The next morning, on July 11th, Cunningham and King examined the ground where this team ran away and

turned over the hack. King described an impression that was made on the ground. Cunningham, the owner of the cattle charged to have been stolen, says it looked like an impression made by an animal falling. They also noticed tracks from a point near where the hack upset, of two head of cattle, through the corn. The testimony tends to show that the curtains on the hack were closed on all sides except in front of the seat. It is also disclosed that witness King and others suspected that defendant was going to steal some cattle, and they were on watch for the purpose of detecting the larceny, but the record fails to disclose that any witness saw in the hack or near the hack any cattle or anything in the shape of cattle. The whole theory of the State, as to the connection of this defendant with the larceny charged, is that the cow and calf were concealed in the hack, and when the team ran away, and the hack was turned over, defendant or his accomplice cut them loose, and the cattle escaped in the corn. To support that theory, the testimony of Geo. King must be relied on.

We have read, in detail, with care, all the testimony in this cause, and while there are a number of little circumstances tending to arouse some suspicion as to this transaction, we take it that it is unnecessary to set out in detail all the testimony in this cause, for, at last, this conviction must find support in the testimony of the witnesses who saw the defendant on the premises, and made examination of the surroundings. at or about the time the larceny is alleged to have been committed. It must not be overlooked that the cattle charged to have been stolen were presumably in the Cunningham pasture.

To constitute larceny, some one had to steal, take and carry away the cattle from the place found, with the intent to convert them to his own use. The State has shown that defendant was in the pasture, and the explanation of the defendant to King as to his presence there is a plausible one—that he was there for the pur-

pose of hunting squirrels.  There is no testimony as
to the actual taking; no witness saw him in the posses-
sion of them; no admission of the defendant that he
took them or even saw them; hence, the State is left
to rely upon the incident as detailed by witness King,
to fasten upon the defendant the possession of the cat-
tle.  He says that, at the time the defendant and his
accomplice were leaving the pasture, he saw them for
a distance of 175 or 200 yards.  That at the time of the
runaway and the upsetting of the hack, he could see
equally as well as when he first observed them, 175 or
200 yards distant.  He testifies that he was watching
closely the movements of the parties and the team, from
the time they came up to within thirty feet of him, until
the incident was over, evidently looking for cattle, as
he was there for that purpose, yet he saw none.  De-
fendant appeared out in the road about the time the
team did, the horses ran into a wire fence, and stopped.
The runaway team only made a circle of from thirty-
five to forty feet.  In this short distance, witness King
watching, not exceeding forty-five feet from the hack,
it is insisted that defendant and his accomplice, during
this incident cut loose and removed from this hack a
cow and calf, without the least indication to the watch-
ing witness that anything unusual was taking place, ex-
cept that the team was running away.  If this was done,
it was the most remarkable feat ever performed.  With
this witness present on guard, suspecting that cattle
were being stolen, and seeing nothing to indicate that
the cattle were in the hack, is it not more reasonable to
infer that the cow and calf were not in the hack than
that they were?  In fact, does not the testimony of
King tend to establish as a matter of fact that they were
not in the hack?  There is also an absence of proof that
this cow and calf were missing from the other cattle
at any time.  Mr. Birch says when he and Cunningham
found the calf, "There was quite a few cattle there
together."

We have carefully analyzed all the testimony as presented by the State, detailed by the witnesses, Birch, Wright, Oliver and others, and while it may be said that it is calculated to arouse a suspicion of guilt of this defendant, yet suspicions or even strong probabilities of guilt do not authorize a conviction. Giving every circumstance its full force and leaving out of view any testimony offered by the defendant, it falls far short of furnishing that clear and convincing testimony upon which the citizen should be deprived of his liberty. The law should be universal in its application; it should be applied to the humble and exalted alike. This defendant may be guilty, but the facts, as disclosed by the record in this case, fail to show it. If there was any substantial evidence upon which to base this verdict, it would not be disturbed; but, in view of the insufficiency of the testimony to authorize this conviction, we must decline to sanction it. The court very clearly declared the law, where a conviction is sought upon circumstantial evidence alone, by instruction No. 4, as follows: "The court instructs the jury that the guilt of the defendant can not be presumed, but must be proved either by direct or circumstantial evidence. And the court instructs the jury that there is no direct evidence of the defendant's guilt in this case. The court, therefore, instructs you that you can not convict the defendant, unless the State has proven his guilt from the evidence beyond a reasonable doubt by facts and circumstances, all of which are consistent with each other and with his guilt and absolutely inconsistent with any reasonable theory of innocence." This declaration was emphasized by instruction No. 5, as follows: "The court instructs the jury that circumstantial evidence should always be cautiously considered and to warrant a conviction, it must be such as to produce in the minds of the jury that certainty of guilt that a discreet man would be willing to act upon in his own grave and important concerns. Such evidence is not sufficient for

conviction unless it excludes every reasonable theory consistent with the defendant's innocence.  If the jury are not satisfied of the guilt of the defendant, beyond a reasonable doubt, the defendant ought to be acquitted, although the unfavorable circumstances, if any, have not been disproved or explained."

The impartial application of the facts of this case, to the law as declared, should have resulted in the acquittal of the defendant.

The court, upon the evidence as disclosed by the record in this case, should have gone one step further and simply declared that the State had failed to make out its case.

The unbroken line of expression of this court is that a judgment of conviction, upon insufficient evidence, should be reversed.  [State v. Mahan, 138 Mo. 112; State v. Marshall, 47 Mo. 378, and numerous other cases.]

Resting upon the testimony of the State alone, it created but a suspicion of defendant's guilt, and whether such suspicion was strong or doubtful, it did not authorize his conviction.  There is an entire absence of the important elements to constitute the offense charged.

As indicated by the record, this cause rests upon circumstantial evidence alone, and where the circumstances point unerringly to the guilt of a defendant, it is a very satisfactory class of testimony.  Difficulties are frequently met in developing all the circumstances establishing guilt, and to the end that the State may have an opportunity to show (if they, in fact, exist), additional circumstances which would clearly point to the guilt of this defendant, the judgment in this case is reversed and the cause remanded.

All concur.