## THE STATE v. MORNEY, Appellant.

Division Two, May 22, 1906.

1. **CIRCUMSTANTIAL EVIDENCE: Essentials to Conviction.** When a conviction rests altogether upon circumstantial evidence, the circumstances proved must be consistent with each other, consistent with the hypothesis that the accused is guilty, and at the same time inconsistent with the hypothesis that he is innocent, and with every other rational hypothesis except that of guilt.

2. **ARSON: Insufficient Evidence.** The evidence in this case, which was a prosecution for arson, *held* insufficient to justify a conviction.

Appeal from Cooper Circuit Court.—*Hon. Wm. H. Martin,* Judge.

REVERSED.

*Roy D. Williams* for appellant.

The evidence is wholly insufficient to sustain the verdict and the instruction in the nature of a demurrer to the evidence, asked by the defendant at the close of the State's case in chief, and again at the close of the whole case, should have been given. State v. Jones, 106 Mo. 312; State v. Scott, 177 Mo. 672; State v. Mahan, 138 Mo. 112; State v. Marshall, 47 Mo. 378.

*Herbert S. Hadley,* Attorney-General, *N. T. Gentry,* Assistant Attorney-General, and *Chas. W. Journey* for the State.

Under the decisions of this, and other courts, the evidence was sufficient; and, the verdict of the jury having met with the approval of the trial court, the judgment should be affirmed. State v. Hunt, 190 Mo. 353; State v. Shines, 125 N. C. 730; State v. Hunt, 88 S. W. 719; Carlton v. People, 150 Ill. 186; Com. v. Bradford, 126 Mass. 44.

BURGESS, P. J.—On the 27th day of October, 1905, the grand jury of Cooper county preferred an indictment against the defendant, Morney, charging him in the first count thereof with arson in the third degree, in having, at said county, on the second day of September, 1905, set fire to and burned a store building situated in said county and belonging to one George Vaughn; the second count of the indictment being the same as the first, save that it avers the ownership of said building to be in one Henry A. Cox.

Thereafter, during the October term, 1905, of said

Cooper County Circuit Court, the defendant was put upon trial for said offense, found guilty by the jury as charged in the first count of said indictment, and his punishment fixed at imprisonment in the penitentiary for a term of five years. Defendant's motions for new trial and in arrest having been overruled, he appeals.

The facts are substantially as follows: On the second day of September, 1905, George Vaughn was the owner of a store building in the village of New Lebanon, in Cooper county, which was used by him and Leslie Thomas as a grocery store. The defendant, a negro, resided with his wife and children on a small farm about four and one-half miles southeast of said village. About one o'clock of the night of the 2nd day of September aforesaid said store building was discovered to be on fire, and investigation showed that said fire originated in a coal oil tank situated on a porch at the rear end of said building. The faucet was open, and the oil apparently running and on fire at the faucet, although it had been left closed when the proprietors left the store the evening before. The building was consumed by the fire. It was suspected that the fire was the work of an incendiary, and when daylight came two searching parties were formed, one going north and the other south, upon the only roads passing through the village. The roads were quite dusty. A light rain had fallen during the night, however, which partially settled the dust. No tracks were found until a gate was reached, about one-half or three-quarters of a mile east of the store. The gate opened into Rube Thomas's pasture, which extended up near said store. The tracks found were those of a barefooted horse, and led from the direction of the store towards the defendant's house, but they could not be tracked back into the pasture, and towards the store, more than about seventy-five yards from the gate. With only a few intermissions at rocky places in the county road, these tracks were followed on to

the Henry A. Cox place, which is about half a mile nearer the Vaughn store than defendant's residence. At the rocky places, above referred to, there was a barb wire fence on each side of the road and no openings in said fences. These tracks led into the Cox place up close to the Cox residence and out again into the road, and along the road into a gate which opened into Mr. Lane's pasture. On account of the sod a short distance inside of said gate, the tracks were lost. The defendant's residence is situated in said Lane pasture; and a short distance beyond his residence is a small lot, which has a gate opening into the Lane pasture. In this last-named gateway the same tracks were found. The fences around this Lane pasture were all up and secure, and it would have been impossible for a man on horseback to have gotten out of said pasture, except through one of the two gates. At various places along the road and at the gates said tracks were measured and carefully examined by several gentlemen. They were all made by a barefooted horse, and the blunt shape indicated that his hoofs were considerably worn. In the lot near defendant's residence early on the morning after the fire the posse found a barefooted gray horse, whose feet were well worn. Tracks of this horse were measured, and they corresponded exactly with the measurement of the tracks in the road and at the gates. This gray horse was examined, and it was found that his ankles and fetlocks had wet dust and dirt on them. It being September, and the grass in said lot being short there was no dew to have wet the horse's legs; nor was there a pond in said lot, from which the animal could have gotten mud on his feet and legs. At the gate going into the lot the tracks of a man were found, which tracks defendant admitted to the posse were his tracks; but said that he made them at nine o'clock the night before. Defendant also admitted to these men that there had been no one through that gate that morning. The members of the posse testified that the tracks of the

man and also all of the horse's tracks showed that they
had been made at the same time and after the rain,
as the dust had been "kicked up." They further testi-
fied—and there was no evidence to contradict it—that
there had been no rain prior to a little while before the
discovery of the fire. And all of the witnesses said that
they experienced no trouble in following said tracks;
one of them saying that they were so plain to be seen
that a man could go in a lope on horseback and follow
them. Some of the men spoke to defendant at the lot
gate and said to him there that he knew that those man
tracks and horse tracks were made after the rain; to
which the defendant made no reply. Three witnesses
testified that as they were returning from the Bunceton
fair that night, they met a negro man riding a gray
horse about half a mile from defendant's house, near
Mr. Cox's residence, and going in the direction of New
Lebanon. This was shortly before twelve o'clock. The
defendant was seen back of the Vaughn store between
sundown and dark the evening before the fire; he said
that he came there to have the blacksmith to sharpen a
plow. On account of the lateness of the hour, the black-
smith had closed up his shop and gone home; and de-
fendant, for some reason, left the money with a mer-
chant at one of the stores to pay in advance for sharp-
ening said plow. Defendant was seen driving his team,
which consisted of a mule and a gray horse, away from
said store and towards his home about dark. Over the
objection of defendant, the State was permitted to show
that two weeks prior to the fire an attempt was made to
burn the same store. This first fire was started about
one o'clock at night in some barrels and rubbish that
had been saturated with coal oil, situated at the rear
end and against the store building. Although the
weather-boarding on the end of the store had been oiled,
the fire was discovered in time to be put out. When
the alarm was given, a number of persons rushed in
in time to assist in putting out said fire; and, in about

half an hour afterwards, defendant came riding up to said store on horseback. Defendant asked what was the matter and what they were all doing; and some one asked him what in the devil he was doing there at that time of night. At first defendant said he had a sick child and came to get some medicine. Several witnesses heard him make this statement. Dr. Fogel, the physician of that place, was in company with the others at the store that night; and, on seeing him, defendant said that he had a sick cow and wanted to know if any one could tell him what was good for a cow with sore tongue. Defendant then went to the drugstore in that village and asked the druggist what was good for a cow with a sore tongue; and purchased the medicine recommended. That night, defendant stated that he saw fire as he was passing Mr. Fairfax's place, a mile and a quarter away, but it was conclusively shown that he could not have done so, as the fire was on the other side of the store building from that place, and a tall hill and considerable timber between said store and that place made it impossible for him to have seen the fire. The State's evidence further showed that George Vaughn had entered into a written contract with Henry A. Cox to sell and convey said store building, but that, at the time of the fire, the contract had not been executed.

On behalf of the defendant, the evidence tended to show that he enjoyed a good reputation prior to the commission of the crime charged. Defendant's wife testified that he went to New Lebanon the evening before to have his plow sharpened, and returned home about nine o'clock p. m. That she and her children had gone to bed but not to sleep. That, after milking his cow, defendant went to bed, and she supposed remained in bed with her all night. That the next morning at four o'clock, defendant called her to get up and cook breakfast. She denied telling Alfred Gaston or any one else that the defendant slept on the floor in the kitchen

the night of the fire. Defendant's evidence further tended to show that, at the time of the first fire and for a number of days prior thereto, he had a cow that was sick with sore tongue, and that a veterinarian had prescribed for her. Defendant took the witness stand and denied all knowledge of a fire; and claimed that he was at home all of that night, having returned about nine o'clock.

In rebuttal, the State introduced Alfred Gaston, who testified that shortly after the arrest, defendant's wife stated to him that defendant, on the night of the fire, pulled off his shoes and laid down on the floor; that she did not know what time he came to bed, but he was in bed the next morning.

At the close of the State's evidence, and again at the close of all the evidence, the defendant demurred thereto upon the ground that it was insufficient to sustain a conviction, but the demurrer was denied, and defendant excepted. The same point is insisted on before us, and is in our opinion the vital question involved in this appeal.

When a conviction for felony rests altogether upon circumstantial evidence, as in this case, "the circumstances proved must be consistent with each other, consistent with the hypothesis that the accused is guilty, and at the same time inconsistent with the hypothesis that he is innocent, and with every other rational hypothesis except that of guilt." [12 Cyc., 488, and authorities cited.] Taking these well-established rules for our guidance, do the facts disclosed by the evidence support and consist with the hypothesis that the defendant set fire to and burned the store building as charged in the indictment? There was no fact or circumstance in evidence tending to show, or from which it could be reasonably inferred, that defendant was any nearer to the building at the time it was burned than one-half or three-quarters of a mile. In order to establish defend-

ant's guilt it devolved upon the State to prove by facts and circumstances that he actually set fire to the building; but the facts proved were not at all inconsistent with his innocence. It matters not that there was no evidence tending to show that some other person than the defendant committed the crime. That there was opportunity for some other to do so cannot be gainsaid. Taking all the facts in evidence, they do not even make out a prima facie case against the defendant. He was not shown to have been guilty of any incriminating act, and it requires stronger and more cogent circumstantial evidence of his guilt than was adduced upon the trial in order to maintain the judgment. If he could not be tracked from the building that was burned, it is reasonable to presume that it would have been just as impossible to have tracked any other person who might have set fire to it. Where a chain of circumstances leads up to and establishes a state of facts inconsistent with any theory other than the guilt of the accused, such evidence is entitled to as much weight as any other kind of evidence, but the chain, as it were, must be unbroken, and the facts and circumstances disclosed and relied upon must be irreconcilable with the innocence of the accused in order to justify his conviction. In this case there was an entire absence of one important link in the chain of evidence; that is, there was no evidence that the defendant was present at the building at the time it was fired. At most, the evidence adduced only raised a suspicion against the defendant, and under such circumstances no conviction for crime should be permitted to stand. In State v. Jones, 106 Mo. 302, it is said: "Mere suspicion, however strong, will not supply the place of evidence, when life or liberty is at stake."

In State v. Scott, 177 Mo. 665, a conviction was sought on circumstantial evidence, and Fox, J., in speaking for the court, said: "We have carefully analyzed all the testimony as presented by the State,

. . . and, while it may be said that it is calculated to arouse a suspicion of guilt of this defendant, yet suspicions or even strong probabilities of guilt do not authorize a conviction. Giving every circumstance its full force, and leaving out of view any testimony offered by the defendant, it falls far short of furnishing that clear and convincing testimony upon which the citizen should be deprived of his liberty. The law should be universal in its application; it should be applied to the humble and exalted alike. This defendant may be guilty, but the facts, as disclosed by the record in this case, fail to show it. If there was any substantial evidence upon which to base this verdict, it would not be disturbed; but, in view of the insufficiency of the testimony to authorize this conviction, we must decline to sanction it. . . . . Resting upon the testimony of the State alone, it created but a suspicion of defendant's guilt, and whether such suspicion was strong or doubtful, it did not authorize his conviction.''

In this case there was also an absence of any proof of an inducing motive for the burning of the building by defendant. There is no pretense that the defendant derived or expected to derive benefit of any kind from the burning of the building, or that he entertained malice or ill-will towards its owner; and, while this does not disprove defendant's guilt, the absence of any motive for the crime should under the circumstances disclosed by this record be taken into consideration in passing upon the question of his guilt.

Our conclusion is that there was no substantial evidence of defendant's guilt, and the demurrer thereto should have been sustained. The judgment should be reversed and the defendant discharged. It is so ordered. All concur.