STATE of Missouri, Respondent,

v.

Horace Edward WILLIAMS, Appellant.

No. 50453.

Supreme Court of Missouri,

Division No. 2.

Oct. 12, 1964.

Thomas F. Eagleton, Atty. Gen., Jefferson City, Burton H. Shostak, Special Asst. Atty. Gen., St. Louis, for respondent.

Donald Gunn, Jr., St. Louis, for appellant.

STORCKMAN, Presiding Judge.

A jury found the defendant guilty of the offense of burglary in the second degree. Section 560.070, RSMo 1959, V.A. M.S. The trial court heard evidence in

chambers and made a finding that the defendant had been convicted of prior felonies. The punishment was, therefore, assessed by the court and the defendant was sentenced to five years in the custody of the Department of Corrections. Section 556.280, RSMo 1959, V.AM.S. The principal contentions on appeal are that the trial court erred in failing to sustain the defendant's motion to dismiss at the close of the evidence, in finding that he had been convicted of prior felonies, in the admission of certain evidence, and in the giving and refusal of instructions to the jury.

On January 5, 1963, at approximately 9:40 p. m., police officers were dispatched to the premises of S. M. Arnold, Incorporated, a dealer in sponges, located at 1701 Papin Street in the City of St. Louis, which is on the northwest corner of the intersection of 17th and Papin. A one-story addition had been built onto the rear of the original two-story building. When the officers arrived, two men jumped from the roof of the one-story addition and ran. They outdistanced the two officers who pursued them on foot, but the defendant was arrested almost immediately thereafter by another officer in a patrol car as the defendant was trying to crawl under a gate in a wire fence enclosing a lot of the Union Electric Company on the southwest corner of 18th and Gratiot Street. Eighteenth Street is one block west of 17th, and Gratiot Street is one block north of Papin.

Investigation of the sponge company's premises disclosed that a hole 30 inches wide and about 22 inches high had been made in a 9-inch brick wall at the rear of the original building at the roof level of the addition. Through this hole a person could go to all parties of the building including the one-story addition. A flashlight and a crowbar were found in front of a company safe on the first floor of the premises. An employee who was the last to leave on the day in question testified that the premises of the sponge company were locked and secure when he left, that

there was no hole in the brick wall and the crowbar and flashlight were not in front of the safe. This coupled with the fact that two men were seen jumping and running from the building constituted substantial evidence that someone broke and entered the building in which there was at the time goods, wares, merchandise, and other valuable things with the intent to steal, which is the offense of burglary in the second degree under § 560.070.

The defendant contends that the evidence was insufficient to prove that the defendant was the person who burglarized the property and therefore his motion for a verdict of acquittal should have been sustained. He relies upon State v. Scott, 177 Mo. 665, 76 S.W. 950, and State v. Tracy, 284 Mo. 619, 225 S.W. 1009, in which it was held that suspicion of guilt, no matter how strong, was not sufficient to support a conviction. But there is more than mere suspicion in this case.

Detectives Menniges and Drazen were the first to arrive at 17th and Papin and were about 50 to 75 feet from the two Negro men who jumped from the building and fled, one of whom was described by the detectives as a man about 5 feet, 10 inches tall, weight about 160 pounds, wearing a dark green jacket, light pants, and a dark hat. This man ran west on Papin and then northwesterly across a vacant lot with the detectives in pursuit. When Detective Menniges saw a marked patrol car in the vicinity of where the man was running, he gave up that pursuit and went after the other man who had gone toward the railroad tracks but was unable to apprehend him. Detective Grazen continued his pursuit of the man in the green jacket and saw the fleeing man crossing 18th toward Gratiot. Detective Drazen then called to the officer in the marked patrol car and returned to the sponge company. The police officer, William Price, took up the pursuit in his patrol car and later brought to the sponge company a Negro man, about 5 feet 10, wearing a dark green jacket, khaki trousers and a dark hat. The

officers identified the man in the green jacket as the defendant. The place where he was captured was about a block to a block and a half from the sponge company. There was evidence that the lighting from spotlights on parking lots as well as street-lights rendered visibility in the area good. No person, other than the man captured, was observed running west on Papin and northwest toward the Union Electric lot.

Officer Price testified that when he arrived at the scene of the burglary in his patrol car, he saw the detectives pursuing a man of the description given. Officer Price drove his car west and saw the man running across 18th Street. He took over the pursuit in his patrol car when Detective Drazen called to him, and caught the man as he was trying to get under the gate. He took the man into custody and eventually returned him in a police cruiser to the vicinity of the sponge company where he was viewed by the two detectives. Officer Price further testified that the man he arrested was wearing the same kind of clothing as the man he saw running across 18th Street. The man arrested was adequately identified as the defendant. There were smears or smudges of brick dust on the green jacket which he was wearing when he was arrested. Microscopic examination made of these dust particles in the police laboratory disclosed that they were similar in appearance to samples taken from the wall of the building that had been breached.

■ It is apparent from the record that the police officers had the fleeing man in sight all or practically all of the time after he jumped from the roof of the burglarized premises until he was arrested shortly thereafter within a block and a half of the scene of the crime. This and the fact that he had smears of brick dust on his clothing similar to that taken from the wall of the building burglarized was substantial evidence connecting the defendant with the commission of the crime and sufficient to support the judgment of conviction. State v. Zammar, Mo., 305 S.W. 2d 441, 447 [10]; State v. Giden, Mo., 369 S.W.2d 212, 214 [6]; State v. Davis, Mo., 367 S.W.2d 517, 519 [2, 3]; State v. Burton, Mo., 357 S.W.2d 927, 930 [3]. The court did not err in denying the motion for a judgment of acquittal.

■ John Klosterman, a chemist employed by the St. Louis Police Department, attended Wisconsin State College and Michigan State University majoring in chemistry and police science. He graduated from Michigan State University with the degree of bachelor of science in police science. He had been employed by the St. Louis Police Department for two and one-half years and had previously done similar work for the State of Michigan for three and one-half years. Mr. Klosterman testified that he made a microscopic examination of the brick dust found on the defendant's jacket and on the crowbar found with a flashlight in the building and he found this dust to be similar to the sample of brick dust from the wall in question. The defendant charges that the trial court erred in admitting the testimony of Mr. Klosterman on the ground that it was highly speculative, conjectural and completely meaningless. He relies upon State v. Murphy, 356 Mo. 110, 201 S.W.2d 280, in which the evidence showed that there were tracks made by a man's shoes in the field from which a stationary gasoline engine was stolen. These tracks appeared to be the same or similar to shoe tracks in a public road nearby where the evidence tended to prove the defendant had been. No measurements or comparisons of the shoe tracks were made by anyone and the court held that the testimony that they appeared to be the same was lacking in probative value. But the evidence in the instant case is more substantial. The defendant was observed at the scene of the crime, was pursued and captured nearby. The fact that he had smears or smudges of brick dust on his clothing without more was substantial and admissible evidence in these circumstances. The witness Klosterman was qualified and the result of his

microscopic examination and comparison of dust particles and other substances was a proper subject of expert testimony. State v. Menard, Mo., 331 S.W.2d 521, 524 [1–3]; State v. Giden, Mo., 369 S.W.2d 212, 213–214 [3]; State v. Burton, Mo., 357 S.W.2d 927, 930 [3]. The court did not err in admitting the testimony of Mr. Klosterman.

■ The defendant complains on two scores of the court's finding that the Habitual Criminal Act was applicable to him. His first objection is that the evidence did not show that .the defendant was subsequently placed on probation, paroled, fined or imprisoned pursuant to the convictions as required by § 556.280. He cites State v. Kent, Mo., 375 S.W.2d 40, in which there was no evidence as to what disposition was made of the defendant. This court reversed and remanded with directions to take proof in that regard. But in this case the defendant is mistaken in claiming that such evidence is lacking.

The state introduced and read into evidence the circuit court record of the defendant's three prior convictions in the Circuit Court of the City of St. Louis. Also admitted in evidence were state's exhibits A-1 and A-2 which were certified transcripts of the serial records of Horace Edward Williams in the Missouri Department of Corrections. These records are competent evidence of the defendant's imprisonment pursuant to his convictions. State v. Garrison, Mo., 305 S.W.2d 447, 452 [9, 10]. One of defendant's prior convictions was appealed to this court. State v. Williams, Mo., 343 S.W.2d 58.

■ The defendant further complains that the proof of the defendant's convictions of prior felonies was insufficient because the state failed to prove that the defendant and the persons referred to .in the records of convictions were the same person. Identity of names is sufficient proof prima facie to establish that the defendant and the person named in the records of prior convictions were one and the same person. State v. Griffin, Mo., 339 S.W.2d 803, 805 [3]; State v. Hands, Mo., 260 S.W.2d 14, 18 [1]; State v. Davis, Mo., 367 S.W.2d 517, 521 [11]. The defendant did not offer any evidence that he was not the person named in the court and prison records. The trial court did not err in applying the Habitual Criminal Act in reliance upon these records.

■ Instruction No. 5 given at the instance of the state told the jury that, if they found that the defendant "attempted to escape to avoid arrest", such circumstance might be considered in determining the defendant's guilt or innocence. The defendant contends the giving of the instruction was error because the use of the word "escape" conveys to the ordinary person the idea that the defendant was under lawful arrest and departed which was contrary to the evidence. The criticism is not sound. The primary definition of "escape" is to get away, as by flight. Webster's 3d New International Dictionary. The cases cited dealing with prosecutions for escaping prison are not in point since being in custody in such case is a prerequisite of the crime. The word is influenced by the context in which it is used. Here it plainly states that it was an attempted "escape to avoid arrest" which negates any notion that the accused has escaped *from custody*. The term "flight", ordinarily used in such circumstances, denotes the act of leaving the scene or vicinity of the crime, and the fact of flight may be shown as a circumstance indicating guilt. State v. Silvey, Mo., 296 S.W. 128, 131 [10]; State v. Peterson, Mo., 305 S.W.2d 695, 700 [11]. In the circumstances of this case, the jury could not have been misled by the instruction.

■ The defendant's final assignment is that the trial court erred in refusing to give instruction A offered by the defendant dealing with circumstantial evidence. We cannot agree that the evidence was entirely circumstantial. As we view the record, the testimony of Detectives Men-

niges and Drazen was sufficient to identify the defendant as one of the persons seen jumping from the building which had been burglarized and fleeing. The court gave instruction 4 which defined and distinguished direct and circumstantial evidence and in its second paragraph covered adequately, and perhaps more favorably, all elements of the offered instruction. The trial court cannot be convicted of error in refusing to instruct on a matter that is fairly and adequately covered by other instructions. The assignment is denied.

We have considered all questions presented for review and find them to be without merit. The defendant was present throughout the trial including his allocution and sentencing. He was effectively represented by able counsel throughout the trial and on appeal. We have also examined the parts of the record and entries designated in S.Ct. Rules 28.02 and 28.08, V.A.M.R., and find them to be in proper form and free from error.

Accordingly the judgment is affirmed.

All of the Judges concur.