**STATE of Missouri, Respondent,**

v.

**Jackie IRBY, Appellant.**

**No. 52902.**

Supreme Court of Missouri,
Division No. 1.

Feb. 12, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, Henry L. Twigg, Sp. Asst. Atty. Gen., St. Louis, for respondent.

James Haw, Charleston, for defendant-appellant.

HOUSER, Commissioner.

Jackie Irby was charged with burglary and stealing. § 560.110, RSMo 1959, V.A.M.S. The jury returned a verdict finding defendant guilty of both charges. Judgment was entered on the verdict. The court sentenced defendant to commitment in the custody of the department of corrections for two years on each charge, the sentences to run concurrently. Defendant has appealed, challenging the sufficiency of the evidence to sustain a conviction.

The state's case, based on circumstantial evidence, tended to show these facts: On the morning of September 2, 1966 John Jackson's gasoline filling station in Whiting was broken into and a quantity of batteries, cigarettes and razor blades were taken, About 5 or 6 o'clock on the preceding evening defendant and three other young men

(whose first names were Dusty, Rayburn and Warren) began driving around Mississippi County in Warren's white 1963 Thunderbird automobile. They were drinking. They went from East Prairie to Wyatt Junction and on to Whiting. Warren "pulled up" and stopped on a little dirt road behind Jackson's filling station, sometime between midnight and 1 o'clock a. m. Defendant was sitting in the rear seat. Warren said something to defendant. The nature of this communication was not shown. Warren had something in his hand (*thought* to be a screwdriver), which he got out of a little pocket in the car. Warren, "kind of mumbling like," said he believed he could "get by with it." He did not say what he thought he could get by with. Warren and defendant got out of the car. They started walking toward Jackson's filling station. Dusty, the state's witness to defendant's activities, testified that he saw Warren go into the filling station, but he did not see defendant go into the filling station and did not know whether defendant went into the station or not. Dusty did not see defendant again after the time defendant left the car with Warren, walking toward the station. It was not shown how far in the direction of the station defendant walked. After Warren entered the filling station Dusty heard a sound like glass breaking. A broken glass in the door was later found. Six or seven minutes after he heard the glass breakage Dusty saw Warren come back to the car with several different kinds of cigarettes in his hand. Defendant was not with Warren when Warren returned to the car. Warren put the cigarettes on the rear floorboard of the car. Rayburn, who had "passed out," was sitting in the car during these events. Warren went back toward the filling station. When Warren returned with the cigarettes Dusty left the car, made his way to a telephone and called, telling his father to come get him because he did not "want any part of it."

The Thunderbird was parked on the wrong side of the road, its lights off and trunk lid raised. A highway patrolman passing by noticed the car, decided to investigate, and found Rayburn sitting in the car, drunk, not knowing where he was. The patrolman found some new batteries, some razor blades and cigarettes in the trunk and on the rear floorboard of the car. The patrolman looked in the direction of the filling station, where he saw two subjects come to the corner of the station. They looked in the direction of the Thunderbird, and then turned and ran across the highway and out into a field. He did not pursue them, could not identify them and could not say that he saw defendant. He was not close enough to identify anyone other than Rayburn. From Rayburn he ascertained the names of the other boys. He radioed this information to the East Prairie police, who picked up Warren and defendant about 1:30 o'clock a. m., traveling south as if leaving East Prairie, in Dusty's father's automobile. Warren's wife and Dusty's father were also in the car. It was not shown that the automobile contained any of the fruits of the crime. There was no evidence of a common scheme or conspiracy to commit a burglary; no evidence of flight; no evidence of contradictory statements made by defendant when arrested, or of any attempt to deceive the officers as to his true name and identity.

Defendant denied that he broke into or entered Jackson's station; denied that he took any property out of the station; denied that they stopped at the station. He testified that they stopped the car at Whiting Ditch, a quarter mile from the railroad crossing at Whiting, where they drank a few beers. He stated that Dusty asked Warren to use his car to see if he could pick up a girl; that Warren and defendant got out of the car and Dusty drove away with Rayburn in the car, "passed out." Dusty was to be gone only a few minutes but he did not return. After waiting for an hour Warren and defendant walked to East Prairie, where relatives of Dusty told them "the law" was looking for them. They met Warren's wife, after which Dusty's father took them back to Whiting.

Dusty's father talked to Mr. Jackson, who had been notified of the break-in. They were on their way home when apprehended.

■ The state's brief, without analyzing the evidence, asserts generally that the evidence goes beyond mere suspicion, concludes that there was sufficient circumstantial evidence to establish guilt and urges that "appellant simply failed to break the chain of circumstantial evidence." The writer of the brief misconceives the nature of the burden resting upon the state, which is to prove the guilt of the defendant beyond a reasonable doubt. Where the state relies upon a chain of circumstances to establish guilt it is the burden of the state to forge every link in the chain; it is not incumbent upon the accused to "break the chain" of circumstantial evidence in order to be entitled to an acquittal. "Where a chain of circumstances leads up to and establishes a state of fact inconsistent with any theory other than the guilt of the accused, such evidence is entitled to as much weight as any other kind of evidence; but the chain, as it were, must be unbroken, and the facts and circumstances disclosed and relied upon must be irreconcilable with the innocence of the accused in order to justify his conviction." State v. Morney, 196 Mo. 43, 93 S.W. 1117, 1119.

■ The facts and circumstances relied upon by the state in this case to establish guilt are not inconsistent and irreconcilable with defendant's innocence and do not point so clearly and satisfactorily to his guilt as to exclude every reasonable hypothesis of his innocence, as required. State v. Walker, Mo.Sup., 365 S.W.2d 597, 601[5]. Although the evidence clearly implicates Warren, places defendant in Warren's company for several hours prior to and immediately before the burglary, and portrays defendant and Warren walking towards the scene of the crime, there is a complete void in the evidence from that point on, as far as defendant's complicity is concerned. From the time defendant and Warren started walking in the direction of the station defendant drops out of sight and does not reenter the picture at or near the scene of the crime or under incriminating circumstances. There is nothing to indicate that defendant knew that Warren intended to burglarize the station. There is no evidence that defendant ever reached the filling station, or served as lookout for Warren, or later had any of the fruits of the crime in his possession or under his control, or that the stolen goods were found in an automobile in which defendant was riding, or that he ever returned to the Thunderbird.[1] The patrolman did not identify defendant as one of the two subjects who fled from the corner of the station.

The state showed that there were two persons actively engaged in the commission of this crime. Notwithstanding defendant was not identified as one of them the state relies upon the inference that defendant was one of them. This, however, is not the only reasonable inference arising from the state's evidence. The state's case demonstrates that there was a person at the scene other than defendant and an opportunity for that other person to have been the accomplice of Warren. It would be equally reasonable to infer from the evidence that that second participant was Dusty, not defendant. Rayburn was *hors de combat* from overdrinking and must be ruled out as a possibility, but Dusty was there on the scene, fully capable of joining Warren in the venture, quite aware of the fact that burglary and stealing were occurring. Dusty was not in or around the Thunderbird when the patrolman arrived to investigate. It is altogether possible that at that moment he (Dusty) was inside the

---

1. See and compare State v. Gibson, Mo. App., 409 S.W.2d 243, 244, where the principal offender told the driver to stop the car, announced "I'm going to go steal a car." When the car was stopped at a used car lot the defendant got out of the car with the principal offender, and the two returned from the car lot together, with the stolen merchandise in their possession.

station, actively assisting Warren. It is not important that the proof does not actually show that Dusty was the other participant. It is sufficient to reconcile defendant's protestation of innocence that there was opportunity for some other person to have been the second participant observed by the patrolman. See State v. Pritchett, 327 Mo. 1143, 39 S.W.2d 794, 797, where the Court said, "Thus we see that the facts and circumstances shown by the evidence are not inconsistent with the innocence of the defendant. It matters not that there is no evidence tending to show that some person other than the defendant killed Frossard. That there was opportunity for some other person to do so cannot be gainsaid. * * * [Citing numerous cases, including State v. Morney, 196 Mo. 43, 93 S.W. 1117, where this concept appears first to have been stated, 93 S.W., l.c. 1119.]"

The most that can be said for the state's case is that it places defendant at the scene of the crime immediately prior thereto, in the company of one who apparently was directly implicated; that it demonstrates that defendant had an opportunity to participate in the commission of the crime and reveals him in very suspicious circumstances. This, however, is not enough to sustain the state's burden of establishing defendant's guilt, either as a principal or as an aider and abetter.

▉ Presence of the accused immediately before the commission of a felony is evidence "to be considered in determining whether he was guilty of aiding and abetting, but in order to aid and abet another in the commission of a crime something more than mere presence must be shown. * * * It is necessary that the accused 'associate himself with the venture' in some fashion, Mays v. United States, 8 Cir., 261 F.2d 662; that some form of affirmative participation be shown, State v. Butler, Mo. Sup., 310 S.W.2d 952, 957,—participation in the crime as something that he wished to bring about; that he sought by his action to make it succeed, United States v. Peoni,

2 Cir., 100 F.2d 401, 402; that he 'consciously shared' in the criminal act. Nye & Nissen v. United States, 336 U.S. 613, 620, 69 S.Ct. 766, 770, 93 L.Ed. 919." State v. Castaldi, Mo.Sup., 386 S.W.2d 392, 395. There is nothing in the state's case to show that this defendant associated himself with this venture, affirmatively participated in the crime, forwarded the effort, or consciously shared in the act.

Appellate opinions reversing convictions of persons accused of larceny after having been seen at or near the scene of the crime under suspicious circumstances in which the accused had an opportunity to commit the offense include State v. Walker, Mo.Sup., 365 S.W.2d 597; State v. Murphy, 356 Mo. 110, 201 S.W.2d 280; State v. Archer, Mo. Sup., 6 S.W.2d 912; State v. Favell, Mo. App., 411 S.W.2d 245. Compare State v. Watson, Mo.Sup., 350 S.W.2d 763, in which a conviction of burglary and stealing under circumstances much more incriminating than those shown here was reversed for like reasons. "Mere suspicion, however strong, will not supply the place of evidence when life or liberty is at stake." State v. Jones, 106 Mo. 302, 17 S.W. 366, 369. "[S]uspicions or even strong probabilities of guilt do not authorize a conviction." State v. Scott, 177 Mo. 665, 76 S.W. 950, 952.

There having been no substantial evidence of defendant's guilt defendant's motion for a directed verdict of acquittal should have been sustained.

This point is dispositive of the case. We need not review the procedural errors assigned.

Judgment reversed and defendant ordered discharged.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.