THE STATE v. WALTER DUNCAN and SELL SMITH, Appellants.— 296 S. W. 149.

Division Two, June 23, 1927.

**1. CONJECTURE: Insufficient.** Conjecture and strong suspicion will not support a conviction. The evidence must be sufficiently clear to show defendant's guilt of the crime charged beyond a reasonable doubt.

**2. INTOXICATING LIQUOR: Sale: Insufficient Evidence.** Testimony of a witness that, at a distance of four hundred yards, he saw one of the defendants, an employee at the premises of the other, hand what looked like a bottle to another man and receive in return what he supposed was money, but did not know what was in the bottle, and further testimony that when the premises were searched later in the day four or five half-pint bottles of corn whiskey were found in one place, and other bottles in other places, is

sufficient to show that corn whiskey was kept and handled in and about the premises, but is not sufficient to support a charge that the two defendants were guilty of selling corn whiskey, but amounts to no more than a strong suspicion that they were selling it.

---

Corpus Juris-Cyc. References: **Intoxicating Liquors,** 33 C. J., Section 499, p. 756, n. 59; Section 541, p. 786, n. 52.

Appeal from Pemiscot Circuit Court.—*Hon. E. P. Dorris,* Special Judge.

REVERSED AND REMANDED.

*Von Mays* for appellants.

The verdict of the jury was not supported by substantial evidence. State v. Smith, 285 S. W. 1039; State v. Bly, 289 S. W. 558.

*North T. Gentry,* Attorney-General, and *David P. Janes,* Assistant Attorney-General, for respondent.

The premises of the defendant Duncan were used in close connection with the handling of illicit whiskey. The finding of whiskey bottles, corks, and other equipment connected with this business, is conclusive proof of this fact. Defendant Smith being seen going to these places on the premises where the liquor and liquor handling equipment was later found, and delivering bottles to parties who paid him, should be conclusive proof that a sale of liquor was being consummated. One of the strongest elements of such proof is the fact that the sheriff found a comparatively large sum of money upon Smith, which, according to his testimony, was in currency of one-dollar bill denominations, and aggregating between $140 and $170. It is not reasonable to presume that defendant Duncan was innocent of knowledge of what was going on. His store was quite small, and the living quarters of defendant Smith adjoined and in fact were a part of his store building, with the quantity of liquor bottles, corks, etc., found in and on these premises, fully warrants the jury in believing that he was a party to the sales of liquor made there. Any other conclusion would not be reasonable, and it is respectfully submitted that the verdict was fully justified. State v. Brock, 280 S. W. 48.

HENWOOD, C.—By an information filed in the Circuit Court of Pemiscot County, Walter Duncan and Sell Smith (appellants) and

C. N. Duncan, Walter Akers and Hiram Bullock were jointly charged with the unlawful sale of one-half pint of moonshine, corn whiskey in that county on January 25, 1925. They were tried together. At the close of the State's case in chief, the State dismissed as to Hiram Bullock. The jury acquitted C. N. Duncan and Walter Akers, but found Walter Duncan and Sell Smith guilty and assessed their punishment at a fine of $500. Failing in their motion for a new trial, they appealed from the judgment and sentence rendered in accordance with the verdict.

There is no dispute as to any material fact in the evidence and the sole question for determination is whether the State made a case for the jury. On January 25, 1925, the appellant Walter Duncan had a patch of eight or ten acres of land at the edge of the town of Caruthersville on the Hayti road, where he operated a store and a gasoline filling station. He sold groceries, lunches and cold drinks. There was a "little tin shack connected on the side of the store where they had a kind of pit to barbecue meat and lunches like that." There was also a barn on the premises, and a "small box house," and a lumber pile of some sort between the barn and the store. Appellant Sell Smith (a negro) and Walter Akers and Hiram Bullock worked at this place, but Akers and Bullock were "fishing up on Wolf Bayou" at the time in question. C. N. Duncan lived in another part of the county, but was at the store that day. H. D. Gaines, the chief prosecuting witness, furnished the only evidence as to any *sale* of intoxicating liquor by appellants or their codefendants. Gaines was an officer, but his official title does not appear in the record. Sometime during the day mentioned he made some *long range observations* of Walter Duncan's premises from behind some weeds on the levee, approximately 400 yards or a quarter of mile away. In this connection, he says, "I was there to see what I could find out, what was going on." As to these observations, he testified as follows:

"Well, I seen a good many cars would drive up there and after the cars would stop, parties would get out, coming in the front; this nigger would come from the back and go out towards the barn, I think he made two or three trips to the barn and made a trip or two out to this little house, and one or two trips out to a lumber pile where there was some lumber stacked up.

"I could see him have something in his hand that looked to be a bottle, and some parties sometimes with him—he would go back after he done gone to this place, and meet them; I could see him hand them something, and one or two times I could see he had something in his hand, looked like he was counting his money, and he would put that in his pocket and go back in.

"Q. When he would be making trips from the store out to the barn and these other places that you speak about, would he have any-

thing in his hand? A. *I couldn't see anything,* he was walking with his hands down, I couldn't tell.''

On cross-examination he admitted that his observations of Sell Smith represented all he knew of whiskey *sales* on the place. When asked the direct question as to whether he saw Sell Smith sell any whiskey, he said: ''Well, like I stated, that's what I *thought* he was doing, I wasn't close enough to tell just what it was.   ·

''Q. That's a supposition? A. From the way it looked.

''Q. Founded upon what you testified you saw on that occasion? A. Yes, sir, what I could see and his actions and the way things were, that's what I *thought* he was doing.

''Q. Were you close enough to tell what kind of a bottle? A. No, I wouldn't be positive what kind of a bottle, looked like a small bottle, I couldn't say just what kind it was.

''Q. That's just your supposition? A. Yes, sir, that's right.

''Q. You were so far away you couldn't tell what kind of a bottle he had in his hand or whether it had anything in it? A. I don't know about it being so very far, *I couldn't tell exactly what was in the bottle.*

''Q. That's the reason you couldn't tell, because you were so far away? A. I guess if I had been close I could have told more.

''Q. You didn't see Sell Smith sell anybody any whisky? A. Just like I stated, what I seen him do, that's what I *thought* he was doing.   ·

''Q. Well, are you swearing to this jury that Sell Smith on that day sold anybody any whiskey of any description? A. Well, *I don't know—I swear I wasn't right close enough to see what kind of change it was* but from the way things looked there, it looked very much like it to me.

''Q. You couldn't tell this jury positively on your oath that Sell Smith sold anybody any whiskey there that day? A. This jury understands just exactly what I said, Senator, and that's all I know; as far as swearing positively that he handed this man whiskey and what kind of money, *I wouldn't do that because I couldn't do it,* but it's just exactly like I stated it.

''Q. You were so very far, you couldn't see whether the bottles were empty? A. *I couldn't see what it had in it,* whether it was druggy, clear or what.

''Q. *Could you tell whether it had any liquid in it?* A. *No, sir.*

''Q. *You wouldn't tell the jury just what kind of bottle it was?* A. *No—I don't know.*'' (Italics ours.)

While this witness displayed no hesitancy in *guessing* about other things, he refused to *guess* or approximate the distance from his location on the levee to the point where he saw Sell Smith making

trips to the barn, though urged to do so both by defending counsel and the court. Finally, his testimony in another case was referred to in the following way:

"Q. You testified in the Sell Smith case what the distance was?
A. Yes, I testified in it.

"Q. Didn't you testify it was four hundred yards? A. Well, as I saw now, *it might be now, it might be that* or it might be less, I don't know, just merely be a guess.

"Q. I am asking you if you didn't testify it was four hundred?
A. *I don't remember*, just like I say it would just be a guess, I don't know." (Italics ours.)

After these observations from the levee, Gaines went back to town and sometime later in the day returned with the sheriff and other officers for a search of the premises. The search warrant directed a search of Walter Duncan's premises. A half-pint bottle of corn whiskey was found under the lumber pile, and four or five half-pint bottles, which had a little corn whiskey left in them, were found in a bucket in the barn. Other empty bottles and a sack of new corks were found in a tool chest in the little box house. The negro (Sell Smith) was found sitting on a bed in the tin shack next to the store. The sheriff arrested him and found a half-pint bottle of corn whiskey on his person. He also had on his person $140 or $170 in currency, most all in one-dollar bills. During the progress of the search C. N. Duncan walked across the road and took two bottles of corn whiskey from his pocket and threw them in the grass and vines on the side of the road.

J. W. McCloskey (cashier of Citizens Trust Company of Caruthersville) testified, on behalf of the defendants, that he had Walter Duncan's barn rented during a part of January and throughout February and March, 1925, and kept there ten mules, two cows and some wagons which belonged to an estate he was handling in probate court.

In addition to this case, two other prosecutions followed the search. Sell Smith (one of these appellants) was tried and convicted in the Circuit Court of Pemiscot County for the unlawful possession of intoxicating liquor and on his appeal the Springfield Court of Appeals reversed the judgment, and remanded the cause on the ground that the search of his person was not authorized by the search warrant, which called for a search of the premises of his employer, Walter Duncan, holding that his motion to suppress the evidence should have been sustained. [State v. Smith, 285 S. W. 1039.] C. N. Duncan, also, was charged with the unlawful possession of intoxicating liquor, and after a change of venue to New Madrid County pleaded guilty and paid a fine.

The evidence in this case shows beyond question that corn whiskey was kept and handled in and about Walter Duncan's premises,

but the evidence as to any *sale of corn whiskey* by Walter Duncan or Sell Smith (these appellants) cannot be said to amount to anything more than a strong suspicion, and, of course, a judgment of conviction based on suspicion only will not be permitted to stand by this court.

The court was confronted with a very similar situation in the case of State v. Bly, 289 S. W. 558, and in that case, HIGBEE, C, speaking for the court, said: "It is not enough that the evidence should be sufficient to raise even a strong suspicion of the defendant's guilt. There is no evidence that the defendant sold Turner anything; that conclusion rests on suspicion and speculation. It may be conceded that the defendant is probably guilty, but, to justify the jury in so finding, the evidence must be so clear and conclusive as to generate in their minds so strong a belief of his guilt as to exclude every reasonable doubt of his innocence. The evidence is insufficient to support the verdict. The defendant is entitled to the equal protection of the law and to a fair trial according to the law of the land."

See also State v. Mohr, 289 S. W. 554; State v. Pinto, 279 S. W. 144; State v. Kelsay, 228 S. W. 756; State v. Tracy, 225 S. W. 1009; State v. Francis, 199 Mo. 692; State v. Scott, 177 Mo. 665; State v. Jones, 106 Mo. 302.

It is appropriate to quote here from Kelley's Criminal Law, Section 301, the following: "Circumstantial evidence should always be cautiously considered; and to warrant a conviction it must be such as to produce in the minds of the jury such certainty of guilt as a discreet man would be willing to act upon in his own grave and important concerns. Circumstantial evidence is not sufficient for conviction, unless it has a tendency to exclude every reasonable hypothesis or supposition consistent with the defendant's innocence, but the evidence need not be so strong and conclusive as to show that it was impossible that any other person could have committed the crime."

It is our conclusion that the evidence before us fails to meet the test required and that the general demurrer offered at the close of all of the evidence should have been sustained. Accordingly, the judgment is reversed and the cause remanded. *Higbee* and *Davis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. All of the judges concur.