THE STATE v. WILLIAM HARDY, Appellant.—34 S. W. (2d) 102.

Division Two, December 20, 1930.

*Thomas E. Deacy* and *Jacobs & Hendersen* for appellant.

*Stratton Shartel,* Attorney-General, and *Carl J. Otto,* Assistant Attorney-General, for respondent.

HENWOOD, J.—The defendant and Rufus Davis were jointly charged in the Circuit Court of St. Clair County, with willfully, unlawfully and feloniously transporting "about two gallons of hootch, moonshine, corn whiskey." The defendant was tried alone, found guilty, and sentenced to imprisonment in the penitentiary for two years, in accordance with the verdict of the jury. In due course, he appealed.

The evidence adduced by the State is substantially as follows:

In the afternoon of May 23, 1928, Edward Myers, City Attorney of Appleton City, in St. Clair County, saw Davis put "some object or other" in an old Chevrolet touring car, which was parked on 4th Street in Appleton City. Shortly thereafter, Myers talked to Davis, and observed that Davis was intoxicated. "Davis had a reputation of handling liquor and of drinking a good deal," and Myers "had a suspicion that there was whiskey there," in the car. Myers "looked into" the car, and "raised up" a cloth in the "back end," and then telephoned H. E. Kirk, the city marshal. At that time, the defendant came "up the street," and he and Davis entered the car. When Kirk arrived, the defendant and Davis were in the front seat, "ready to leave," with the defendant at the wheel. Kirk said to the defendant: "Hold on, we want you, and what you have here." Then the defendant "leaned over," and, "in a low-toned voice," said to Myers: "I will leave town right away." Kirk saw a one-gallon glass jug of liquor, and, upon removing "the cover," found two more one-gallon glass jugs of liquor, "setting between the front and rear seat, on the bottom of the car." Two of the jugs were full of liquor, and the other one contained about a pint or quart of liquor. The liquor "looked like whiskey used to look" to Kirk. Kirk saw "the liquor in the car" before he arrested the defendant. The prosecuting attorney was notified of the occurrence, and "about nine o'clock that night"

the defendant was turned over to a deputy sheriff. Myers took charge of the three jugs of liquor. One was stolen from the sheriff's office prior to the trial, but the other two were produced at the trial, admitted in evidence, and exhibited before the jury. The liquor in these two jugs was "corn whiskey," according to the testimony of four witnesses, two of whom smelled it and tasted it. One of these witnesses, Louis Jackson, a deputy sheriff, said it was "very similar to that which is unlawfully manufactured." After the defendant was arrested, Myers asked him where he got the liquor, and he said "he got it from a farm up towards Kansas City." He told Kirk "he got it near Kansas City;" and that "he was going fishing." He told Charles Dingus, the mayor of Appleton City, "he got the liquor from a farm near Kansas City;" and that "he was going south, to Taberville," in St. Clair County, about ten miles from Appleton City; and that "he was traveling in a Chevrolet Car." On the day in question, John Chapel, a resident of Appleton City, saw Davis in an old Chevrolet touring car, about seven miles south of Appleton City, going north, towards Appleton City. Another man, whom Chapel did not know, was driving the car. When asked if the defendant "looked like" the man he saw in the car with Davis, Chapel said: "I don't remember."

The defendant stood on his demurrer to the evidence, and now contends that the State failed to make a case for the jury.

After a careful consideration of the evidence, we have concluded that the defendant is right in this contention. Where, as in this instance, the State relies wholly upon circumstantial evidence, "the circumstances, to warrant a conviction, must be consistent with each other, must tend to prove guilt, and not only must be consistent with the hypothesis of defendant's guilt, but must be inconsistent with every other reasonable hypothesis, including the hypothesis of his innocence." [16 C. J. 1011.] See, also, State v. Morney, 196 Mo. 43, 93 S. W. 1117. Measured by this yardstick, the evidence in this case falls short. In other words, all of the facts and circumstances developed by the State may be taken as true and the defendant, nevertheless, be innocent of the crime charged. It appears that the defendant, when arrested, was at the wheel of the old Chevrolet touring car, "ready to leave" Appleton City, with two gallons, or more, of corn whiskey "setting between the front and rear seat, on the bottom of the car;" and it further appears that, after he was arrested, the defendant said he "got" the liquor "from a farm near Kansas City," and that "he was going fishing," near Taberville, about ten miles from Appleton City, in St. Clair County, and that "he was traveling in a Chevrolet car;" and it further appears that, sometime during the day in question (the time not appearing),

Davis was seen in an old Chevrolet touring car, with another man, the driver of the car, about seven miles south of Appleton City, going north, towards Appleton City. The evidence, however, fails to show when the car, in which Myers and Kirk found the liquor, was driven into Appleton City, or who drove it into Appleton City, or that the liquor was in it when it was driven into Appleton City. In short, the evidence fails to show that the defendant transported the liquor. True, the defendant's statement that he "got" the liquor "from a farm near Kansas City" raises a strong suspicion that he transported it "from a farm near Kansas City" to Appleton City, but equally as strong is the suspicion that the liquor was delivered to the defendant at Appleton City by Davis, who "had a reputation of handling liquor," and who put "some object or other" in the car in which, shortly thereafter, the liquor was found. While Myers saw Davis approach the car and put "some object or other" in the car only once, it may be that Davis had approached the car previously, and that he transferred the three jugs of liquor, one at a time, from another car. It is not the province of a jury to choose between suspicions, and a verdict based upon suspicion will not be permitted to stand. "Mere suspicion, however strong, will not supply the place of evidence, when life or liberty is at stake." [State v. Jones, 106 Mo. 1. c. 313, 17 S. W. 1. c. 369.] The demurrer to the evidence should have been sustained. [See our rulings in State v. Perkins, 18 S. W. (2d) 6, and cases cited therein.] .

It will suffice to say that there is no substantial merit in any of the other complaints of the defendant.

Because of the insufficiency of the evidence, the judgment is reversed and the cause remanded. All concur.