STATE of Missouri, Respondent,

v.

Eldon STOSKOPF, Appellant.

No. 25265.

Kansas City Court of Appeals, Missouri.

Oct. 5, 1970.

W. V. Mayse, Bethany, for appellant.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Thomas L. Patten, Asst. Atty. Gen., Jefferson City, for respondent.

MAUGHMER, Commissioner.

The defendant Eldon Stoskopf, was found guilty of "wilfully and maliciously" destroying buried telephone cables of the Grand River Mutual Telephone Corporation of Princeton, Missouri, by causing said transmission lines "to be severed" through acts of his own or those of his employee or agent by the use of an earth-moving machine, commonly "designated as a bulldozer". The Information charged that the alleged offense occurred on October 13, 1967, in the County of Harrison and State of Missouri. The prosecution was under Section 560.310, V.A.M.S., which is a statute providing a penalty for destroying telephone lines (and other acts), and declares such to be a misdemeanor. Punishment of not to exceed one year in jail and a fine not in excess of $1,000.00, or both, is prescribed for violation of the statute. Defendant's punishment was fixed, in accordance with the jury verdict, at a fine of $200.00 and 90 days in jail, with suspension of the jail sentence. The defendant has appealed on the sole ground that the court erred in denying his motion for directed verdict, bottomed upon a contention that the evidence was insufficient to support a conviction.

There is no real controversy as to the facts. On March 9, 1966, the defendant, describing himself as "owner", signed a written document granting to the Grand River Mutual Telephone Corporation, an easement to construct and lay underground telephone lines on a definitely-described farm, lying south and east of Bethany, in Harrison County, Missouri. The instrument authorized laying lines "near" a fence which abutted a highway running along the farm. The company agreed to pay any damages caused by laying the lines or by operations thereafter. Sometime between March 9, and August 31, 1966, the company laid telephone lines, buried approximately 40 inches, across this farm, not "near the fence", but in order to go around a deep ditch, the buried cables ran like a V and to a distance of approximately 300 feet away from the fence.

Seven witnesses, all employees of the company, testified for the State. Mr. Clifton Stanton, employed in the right-of-way department, was the person who secured the written easement from the defendant. He said he told Mr. Stoskopf it would be necessary to go into the field in order to get across the ditch, and defendant said that would be all right. The written document or easement however, was not amended to so state. After the lines were laid, and on September 29, 1966, Mr. Stanton visited the defendant (as he did other persons whose lands were traversed by the telephone lines) to adjust any claim for damages. He said he offered $50.00 but the defendant wanted $200.00 and said, "The price is going up every day." Mr. Stanton also quoted the defendant as saying in late September, 1967, that he was "going to do some bulldozing work down there and if we didn't settle for it he was going to bulldoze that cable out." A few days before October 12, 1967, Mr. Stanton and Mr. George Martz, district manager for the company, discussed the matter with defendant in Bethany, Missouri. They testified that Mr. Stoskopf told them he was going to do some work on the 60 acres—pushing brush—that the cables were in his way, and that he said, "I'll cut your cable"; "I'll still get your cable if you don't do something with it." He also told them that a Mr. Darby, with a bulldozer, was coming the next day. Almost immediately thereafter and on October 12, 1967, at about 11 A.M., Mr. Martz, Richard Buck, company equipment supervisor, H. L. Thomas, in charge of plant material for the company, and Mr. Coda Clapham, construction supervisor, went to the Stoskopf farm where they found the defendant with Mr. Bill Darby and a bulldozer. All three

were standing in a corner of the farm but quite some distance from the buried telephone lines. These company witnesses said Mr. Thomas offered to locate and stake the cable—that is, to set stakes every 50 feet along the line, with tags tied to the top indicating the depth of the cable at that spot, but defendant responded: "You know you will be trespassing, but I see no reason why you can't go ahead and stake it * * * But we'll get your cable." Mr. C. W. Chastain, general manager for Grand River, produced a letter from defendant dated February 3, 1967, stating that the line had been placed at an unauthorized location. There were also letters back and forth between this witness and Mr. William Esely, an attorney representing defendant, relative to the question of damages. During the latter part of the negotiations, Mr. Stoskopf was asking $500.00 in damages.

The defendant did not take the stand in his own behalf, nor did he call any witnesses. His employee, Mr. Bill Darby, was called as a witness by the State, but refused to testify on the ground of self-incrimination.

About 6:30 P.M. on the evening of October 13, 1967, trouble was reported on the Gilman City-St. Joseph toll circuit. Mr. Bill Cox, phone company employee in charge of "maintenance and trouble" was called immediately by Mr. Martz, general manager. Mr. Cox then "run tests" by which he was able to locate the situs of the trouble. He said it was on the Stoskopf farm. He went there and was joined by General Manager Martz and Mr. Thomas. They said they could see there had been some brush bulldozed and the dirt "had been disturbed" near the buried lines with some of the stake markings gone. The company's repair crew did not dig up the line on defendant's property or determine precisely what had happened. To effect a repair they cut the line at each end where it entered the Stoskopf farm, tied in a new connecting line and laid it on the highway right-of-way near the fence. There was no evidence that defendant or Mr. Darby was in the area on the day of the incident or that any bulldozing had been done on that day.

■ Under our laws of criminal procedure a defendant is clothed with the presumption of innocence, which abides with him until the evidence establishes his guilt beyond a reasonable doubt. The case before us is based upon circumstantial evidence. A conviction may be based upon circumstantial evidence alone. However, to convict upon such evidence alone the State must prove a set of circumstances consistent with each other, consistent with an hypothesis of defendant's guilt, and inconsistent with an hypothesis that he is innocent, and inconsistent with every rational hypothesis except that of guilt. State v. Bunton, Mo., 453 S.W.2d 949, 952; State v. Sallee, Mo., 436 S.W.2d 246, 249, 250; State v. Blankenship et al., 330 Mo. 792, 50 S.W.2d 1024, 1026.

Apparently the State does not contend that defendant personally "severed" the lines with a bulldozer. There is not even a suggestion that defendant himself ever operated or was experienced and qualified in the operation of a bulldozer. We understand the contention of the prosecution to be that the defendant collaborated and conspired with his employee Bill Darby, bulldozer operator, to commit the offense charged and that the evidence supports such contention. For the evidence to support this contention it must be shown that defendant wilfully severed the company's telephone lines with a bulldozer operated by his employee, Bill Darby. Malice (Section 560.600, V.A.M.S.) is inferred from the act. All of these facts must be proved beyond a reasonable doubt and in conformity with the requirements where circumstantial evidence alone is relied upon.

■ The evidence is that defendant granted an easement to lay the telephone lines on the farm and near the fence. The company laid the lines in a V shape, going as much as 300 feet away from the fence.

For more than a year defendant and his lawyer, orally and in writing, complained about this departure and sought to collect damages or have the installation moved, but to no avail. On numerous occasions, weeks before and including the day before service failure, defendant threatened to "cut the line", or "get the line" and made other similar statements. On the day before the incident, defendant, with Bill Darby, the operator of the bulldozer, and with the machine itself standing by, told some company employees he was going to bulldoze some brush, "do some work" and "would get their line". Then on the following day there was a service failure in the toll line somewhere on defendant's farm.

There is no direct proof that the line was cut or "severed" as charged. The line remains buried to this day. Other types of incidents may and sometimes do, interrupt the proper function of such lines. The testimony that "dirt was disturbed" near the buried lines is not proof of disturbance to a depth of some 40 inches or that the line was "severed" by a bulldozer. There is some testimony that brush was bulldozed. If heavy brush or small trees were "bulldozed out" near the line their roots might break the wires. No person saw either defendant or Bill Darby or the bulldozer near the scene on the day of the accident. All these essential elements of proof are left largely to speculation and we are told by the Supreme Court in State v. Perkins, Mo., 18 S.W.2d 6, 8, that "A verdict based upon *mere conjecture,*' will not be permitted to stand."

It is true that a motive for the act charged was shown—actually by defendant's own spoken threats, but threats, motives and opportunity alone are not sufficient. Defendant did not testify and Bill Darby took the Fifth Amendment, but these actions are not proof (under our law) and are not legally to be considered in determining guilt.

Certainly the evidence revealed suspicious circumstances. But defendant is not shown to have been in the vicinity on the day of the occurrence. It is not definitely shown that the lines were cut or "severed" as charged and if so, there is no proof (only speculation) that it was done with a bulldozer. If defendant and Bill Darby conspired to cut the lines with a bulldozer and did so as charged, such a finding must rest largely upon suspicion and conjecture.

We cannot hold that this evidence, even though it may raise grave doubt as to defendant's innocence, is sufficient to authorize a conviction for a violation of the criminal law. The State must prove his guilt. Defendant is not required to prove his innocence. State v. Hardy, 326 Mo. 969, 34 S.W.2d 102.

The State cites State v. Ramsey, Mo., 368 S.W.2d 413. There the charge was burglary and a conviction was affirmed. However, the court there pointed out that circumstantial evidence which raises a suspicion of guilt is insufficient. But in that case it was shown that defendant at the time of the burglary was sitting in an automobile near the scene while a padlock taken from the burglarized premises and some burglar tools were found in the car. This constitutes rather strong circumstantial evidence.

In State v. Irby, Mo., 423 S.W.2d 800, the Supreme Court reversed a burglary conviction and gave this requirement for a conviction on circumstantial evidence alone (Syllabus 4):

"In order to show that one aided and abetted another in the commission of a crime something more than mere presence must be shown, it is necessary to show that accused associated himself with venture in some fashion, that he participated affirmatively in some form, that he participated in crime as something he wished to bring about, that he sought by his action to make it succeed, or that he consciously shared in the criminal act."

The judgment is reversed and defendant discharged.

SPERRY, C., concurs.

PER CURIAM:

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.